[No. B200999. Second Dist., Div. Eight. Oct. 27, 2008.]

THE PEOPLE, Plaintiff and Appellant, v.
MICHAEL JOHN BERGIN, Defendant and Respondent.

## COUNSEL

Steve Cooley, District Attorney, Patrick D. Moran, Phyllis Asayama and Cassandra Hart-Franklin, Deputy District Attorneys, for Plaintiff and Appellant.

Doherty & Catlow, John Doherty and Paul Sowa for Defendant and Respondent.

OPINION

**COOPER, P. J.—**

## SUMMARY

The People appeal from an order requiring Michael John Bergin, as a condition of probation, to pay restitution to victim Jennifer Armstrong in the amount of $36,900.39 for medical expenses. The People contend the restitution amount should have been $138,667.03 (the amount billed by Armstrong's medical providers) rather than $36,900.39 (the amount the medical providers accepted from Armstrong's insurer as full payment for their services, plus the deductible paid by Armstrong). Finding no merit in the People's contention, we affirm the restitution order.

## FACTUAL AND PROCEDURAL BACKGROUND

Bergin was charged in a felony complaint with violations of the Vehicle Code in connection with an incident that occurred on July 16, 2004. Bergin was turning left at the corner of Fountain Avenue and Crescent Heights Boulevard in Los Angeles, and his car struck pedestrian Jennifer Armstrong. Armstrong suffered injuries, including a fractured left knee requiring two surgeries. On March 10, 2005, Bergin entered a plea of nolo contendere to a charge of driving with a blood-alcohol level of 0.08 percent or more and causing injury to another person. (Veh. Code, § 23153, subd. (b).) He was convicted and placed on formal probation for 36 months. Conditions of probation included making restitution to Armstrong.

Twenty-two months later, on January 8, 2007, Armstrong filed a brief requesting restitution in the amount of $150,667.03, a sum that included $138,667.03 for medical expenses. Meanwhile, during the time between Bergin's plea in 2005 and the restitution hearings in 2007, Armstrong brought a civil action against Bergin. She obtained a judgment in the sum of $91,262.02. Of that amount, $36,744.24 was for medical expenses. (The jury awarded $129,269.53 in economic damages for medical expenses, and the trial court reduced the amount to $36,744.24. The reduction was in accordance with *Hanif v. Housing Authority* (1988) 200 Cal.App.3d 635, 640 [246 Cal.Rptr. 192] (*Hanif*) [an injured plaintiff may not recover from the tortfeasor more than the actual amount she paid, or for which she incurred liability, for medical services].)

A restitution hearing was held on February 9, 2007, at which the trial court expressed its tentative intention to "follow the civil judgment," but gave the parties an opportunity to brief the point. After hearing arguments at two further hearings, the trial court issued an order requiring Bergin to pay restitution in the sum of $36,900.39 for medical expenses. While recognizing it could disregard the civil court judgment, the court observed: "Why shouldn't I follow it so that we can have consistent decisions, consistent verdicts? This case realistically we should have had a restitution hearing two years ago. [¶] . . . [¶] So part of the problem is that everybody sat on their rights waiting on the civil court to take action [and] when that outcome wasn't satisfactory[,] [i]t's coming back here. That doesn't seem to me to be a good solution either. So that's why it seems to me—we want Ms. Armstrong to be whole, and it seems to me she should be made whole from the standpoint of economic losses if I make the order that I'm going to make. I don't see how she would not be 100 percent compensated."

The People filed a timely appeal from the trial court's order.

## DISCUSSION

The People contend the trial court should have set restitution in the amount billed by Armstrong's medical providers. According to the People, the plain language of the restitution statute, as interpreted in *People v. Birkett* (1999) 21 Cal.4th 226 [87 Cal.Rptr.2d 205, 980 P.2d 912] (*Birkett*) and further explained in *People v. Hove* (1999) 76 Cal.App.4th 1266 [91 Cal.Rptr.2d 128] (*Hove*), precludes the court from ordering "less than full restitution merely because the victim's insurer has adjusted downward the medical costs it would pay." But the People's argument assumes the very point at issue: whether the court ordered "less than full restitution" when it ordered Bergin to pay Armstrong the amount her insurers actually paid for medical expenses, rather than the amount "actually incurred by Armstrong's medical providers." We conclude the trial court fully complied with the statute's mandate to "order full restitution" of Armstrong's "economic loss as a result of [Bergin's] conduct . . . ." (Pen. Code, § 1202.4, subd. (f).)

■ Penal Code section 1202.4 contains an express statement of the Legislature's intent: "that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from

any defendant convicted of that crime."[1] (§ 1202.4, subd. (a)(1).) The restitution order "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." (§ 1202.4, subd. (f)(3).) Only a victim is entitled to restitution; the victim's insurer cannot obtain restitution from a criminal defendant. (*Birkett, supra*, 21 Cal.4th at p. 229 [insurers do not become direct victims by reimbursing crime losses under the terms of their policies; victim has the right to restitution based on the full amount of her losses "without regard to full or partial recoupments from other sources"].)

In our view, the only question presented by this case is whether Armstrong "incur[red] any economic loss" for medical expenses beyond the $36,900.39 the trial court ordered Bergin to pay her. If she did, then the trial court abused its discretion in failing to comply with the statutory mandate to fully reimburse her for economic losses. But we can detect no basis for concluding that Armstrong incurred any other economic loss beyond that identified in the trial court's order. The People say Bergin must pay restitution in the amount "actually incurred by Armstrong's medical providers," but of course the statute says nothing of the sort. Indeed, Armstrong's medical providers agreed with Blue Cross to accept the amounts Blue Cross paid on Armstrong's behalf; neither Armstrong nor her insurer expended more than the trial court ordered to be paid to Armstrong as restitution.[2]

The People nonetheless insist that the trial court was required to order restitution in the amount billed by Armstrong's medical providers, even though neither Armstrong nor her insurers paid that amount. The People rely on *Hove, supra*, 76 Cal.App.4th 1266, where the court upheld a restitution order requiring the defendant to pay the victim "the full amount of the losses caused by his crime," even though the victim had no actual economic losses, because all his medical expenses were paid by Medi-Cal or Medicare benefits. (*Id.* at p. 1272.) Further, the trial court "used the claims billed amount ($286,565.92) rather than the total amounts which had actually been paid by the date of the computer run ($89,054.34)." (*Id.* at p. 1274.)

*Hove* does not assist the People. First, *Hove* is merely an application of the principle stated in *Birkett*: "the immediate victim of the probationer's crime

---

[1] Further statutory references are to the Penal Code, unless otherwise specified.

[2] The People repeatedly imply that amounts billed by medical providers constitute "the victim's actual costs incurred . . . ." But "incur" means "to become liable or subject to" (Webster's 9th New Collegiate Dict. (1989) p. 611), and there is no suggestion in the record that Armstrong was at any time liable for the amounts billed by her medical providers.

was entitled to receive restitution 'directly' from the probationer for the full amount of the loss caused by the probationer's criminal conduct," and "such reparation should go entirely to the individual or entity the offender had directly wronged, regardless of that victim's reimbursement from other sources." (*Birkett, supra,* 21 Cal.4th at pp. 245, 246, italics omitted.) Second, the trial court had good reasons for ordering restitution in the amount of the "claims billed," rather than the amount actually paid by Medi-Cal or Medicare as of the date of the computer report presented to the trial court. The victim in *Hove* was totally incapacitated and in a vegetative state as a result of the defendant's crime, and would always require long-term care in a subacute nursing facility. (*Hove, supra,* 76 Cal.App.4th at p. 1268.) The trial court, in ordering restitution in the higher amount (claims billed instead of amount paid), noted that "there will be continuing care costs beyond the date of the computer run. Obviously, if [the victim] remains in a vegetative state the rest of his life, as expected, the costs caused by defendant's conduct will far exceed the amount of the restitution actually ordered." (*Id.* at pp. 1274–1275.) The Court of Appeal accordingly found the trial court did not abuse its discretion in determining restitution on the basis of the claims amounts billed to Medi-Cal (*id.* at p. 1275)—a conclusion with which it is difficult to disagree. In any event, *Hove* does not support the proposition that a trial court *must* order restitution in amounts billed by medical providers, regardless of whether the victim or her insurers actually incurred, or might in future incur, those expenses.

■ The People also assert that it was error for the trial court to rely on *Hanif*—which holds that an injured plaintiff may not recover from a tortfeasor more than the actual amount of medical expenses she paid or for which she incurred liability—because *Hanif* was a civil case analyzing tort law. (*Hanif, supra,* 200 Cal.App.3d at p. 640.) But the civil or criminal nature of a case does not render the principles adduced in the case inapplicable in any other context. Indeed, the Supreme Court has analogized restitution in civil cases with restitution in criminal cases. (*People v. Giordano* (2007) 42 Cal.4th 644, 658 [68 Cal.Rptr.3d 51, 170 P.3d 623] [the object of restitution is the same in the context of a criminal conviction as it is under unfair competition law, that is, to restore the economic status quo]; see also *People v. Hamilton* (2003) 114 Cal.App.4th 932, 944 [8 Cal.Rptr.3d 190] ["[t]here is no reason why that same principle of tort law [the collateral source doctrine] should not apply to restitution for crime victims"].) Just so here: there is no reason why the *Hanif* principle—that "an award of damages for past medical expenses in excess of what the medical care and services actually cost constitutes

overcompensation" (*Hanif, supra*, 200 Cal.App.3d at p. 641)—should not be applied in a criminal restitution case.

Finally, we observe that in analogous circumstances—a restitution order in a juvenile offender case—another court reached the same conclusion we do here. In *In re Anthony M.* (2007) 156 Cal.App.4th 1010 [67 Cal.Rptr.3d 734], the juvenile court ordered the minor to pay victim restitution for medical expenses based on the amount billed by the victim's health care provider, rather than on the amount actually paid by Medi-Cal.[3] (156 Cal.App.4th at p. 1013.) The Court of Appeal reversed the order, holding that, because the victim was only liable for the amount expended by Medi-Cal, "the juvenile court erred by ordering victim restitution for past medical expenses in excess of the actual amount expended or incurred." (*Id.* at pp. 1014, 1017 [restitution order must fully reimburse the victim for economic losses incurred as a result of the juvenile's criminal conduct, without regard to potential reimbursement from a third party insurer, but the order is not intended to provide the victim with a windfall].)[4]

■ In sum, Penal Code section 1202.4 requires restitution "directly from [the] defendant" of "any economic loss" as a result of the defendant's crime. (§ 1202.4, subd. (a)(1).) Restitution is to be without regard to the victim's reimbursement from other sources. (*Birkett, supra*, 21 Cal.4th at p. 246.) The restitution ordered is to be "sufficient to fully reimburse the victim . . . for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." (§ 1202.4, subd. (f)(3).) Neither Armstrong nor her insurers incurred any economic loss beyond the amount identified in the trial court's restitution order. Like the trial court, we find it impossible to see any basis for concluding that Armstrong has not been "100 percent compensated" by payment of the amount specified in the trial court's order.

---

[3] The court applied Welfare and Institutions Code section 730.6, "which is the parallel provision [to restitution requirements for adult offenders] applicable to juvenile offenders." (*In re Anthony M., supra*, 156 Cal.App.4th at p. 1016.) In like manner as Penal Code section 1202.4, Welfare and Institutions Code section 730.6 provides that it is the Legislature's intent that a victim "who incurs any economic loss as a result of the minor's conduct shall receive restitution directly from that minor," and a restitution order "shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct . . . ." (Welf. & Inst. Code, § 730.6, subds. (a)(1), (h).)

[4] The People say the rationale of *In re Anthony M.* is not applicable because the case involved Medi-Cal, not private insurance. While, by law, final payment by Medi-Cal to a medical provider constitutes payment in full, the People say there is no law precluding health care providers who accept private insurance from "collect[ing] any unpaid balance from a patient who recovers from a third-party criminal wrongdoer, depending upon their plan or policy provisions." But the People point to no such "plan or policy provisions" in this case, and we therefore think it is safe to assume there are none; certainly none was presented to the trial court.

## DISPOSITION

The order is affirmed.

Rubin, J., and Flier, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 11, 2008, S168855. Werdegar, J., did not participate therein.