[No. A125758. First Dist., Div. Five. Apr. 23, 2010.]

In re ERIC S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ERIC S., Defendant and Appellant.

**COUNSEL**

Michael Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Christina vom Saal, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**NEEDHAM, J.**—Welfare and Institutions Code section 730.6 requires a juvenile ward to pay victim restitution for economic losses incurred as a result of the ward's criminal conduct. In *People v. Duong* (2010) 180 Cal.App.4th 1533 [103 Cal.Rptr.3d 678] (*Duong*), the court held that victim restitution ordered against adult offenders under Penal Code section 1202.4 may include amounts billed for medical services provided by a health maintenance organization (HMO), even when the victim is an HMO member not required to pay for those medical services. We conclude the reasoning in *Duong* applies equally to direct victim restitution ordered in wardship cases under Welfare and Institutions Code section 730.6. We affirm the order requiring appellant Eric S. to pay direct victim restitution that included the cost of medical treatment the victim received as a member of Kaiser California North (Kaiser), although we modify that portion of the award to the amount of Kaiser's lien rather than the full cost of the services.

## BACKGROUND

The underlying facts of the crime in this case are not particularly relevant to the issues in this appeal. Suffice it to say that 17-year-old appellant and two teenage companions attacked the 44-year-old victim, during which time appellant hit the victim in the head with a two-by-four. As a result of the attack, the victim suffered serious injuries including a gash in his head requiring seven staples, a fractured cheekbone and swelling to the face, a contusion on his right forearm, a sprained knee and torn ligaments, a black eye, and severe swelling in the forearm and knee area. He was a member of Kaiser and received extensive medical treatment at a Kaiser facility.

Appellant was declared a ward of the juvenile court after he admitted a felony count of assault by means of force likely to cause great bodily injury. (Welf. & Inst. Code, § 602; Pen. Code, § 245, subd. (a)(1).) He was ultimately released on home probation subject to various conditions, including an order that he pay direct victim restitution. A restitution hearing was held at which the district attorney asked the court to include the cost of the victim's medical treatment at Kaiser. Appellant argued that restitution should be limited to the victim's out-of-pocket expenses. Appellant reasoned that because the victim was a member of the Kaiser HMO and would not be required to pay for the medical services he received there, restitution for those expenses was not required to make the victim whole.

In support of the request that the restitution order include the expenses from Kaiser, the district attorney submitted documentation from Kaiser's collection agency, an entity called "Healthcare Recoveries." A representative of Healthcare Recoveries had written to the district attorney referencing the victim as "Our Insured/Member" and indicating that his health plan was "Kaiser California North." The body of the letter stated: "Attached is an updated Consolidated Statement of Benefits provided by the above-referenced Health Plan to date. It is our understanding that all of these benefits are related to the date of injury shown. [¶] The statement may contain capitated charges. These providers receive a set dollar amount determined by a per member/per month calculation to deliver medical services to a specified group of people. [¶] At settlement, Kaiser will accept a 20% reduction on all capitated charges with dates of service after April 1, 2001 unless a compromise is negotiated based on other factors. Only Kaiser facility charges are subject to this reduction. . . . An additional reduction for attorney fees will also be allowed if the member is represented. With the 20% reduction for capitated charges, the lien amount associated with the attached Consolidated Statement of Benefits is $32,249.48. . . ."

Two documents entitled "Consolidated Statement of Benefits" were attached to the letter from Healthcare Recoveries itemizing the medical services rendered to the victim as a Kaiser member. The statements were comprised of four columns listing the "Date of Service," "Procedure Code," "Billed Am[oun]t" and "Provided Benefits" for each service. The "Billed Am[oun]t" was the same as the "Provided Benefit" in all of the entries. One of the statements reflected "Total Billed Charges," "Total Benefits Provided" and a "Balance Due," each in the amount of $40,311.85. The second statement reflected "Total Billed Charges," "Total Benefits Provided" and "Balance Due," each in the amount of $8,308.05.

Based on this documentation, the court ordered that appellant pay direct victim restitution in the amount of $51,270.06, which included $48,619.90 ($40,311.85 + $8,308.05) for the cost of services at Kaiser and $2,650.16 for additional out-of-pocket expenses incurred by the victim. This appeal follows.

## DISCUSSION

Appellant contends the restitution order must be reduced by $48,619.90, the amount attributable to the services rendered by Kaiser. He argues that direct restitution is limited to economic losses actually incurred by the victim and should not include medical expenses the victim is not obligated to pay

for personally. Because the relevant facts are essentially undisputed and our primary concern is the interpretation of the restitution statute, we review the claim de novo. (See *In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1016 [67 Cal.Rptr.3d 734] (*Anthony M.*); *In re K.F.* (2009) 173 Cal.App.4th 655, 661 [92 Cal.Rptr.3d 784] (*K.F.*).)

Welfare and Institutions Code section 730.6, subdivision (a) provides, "It is the intent of the Legislature that a victim of conduct for which a minor is found to be a person described in Section 602 who incurs any economic loss as a result of the minor's conduct shall receive restitution directly from that minor." Under subdivision (h) of that same section, direct victim restitution "shall be imposed in the amount of the losses, as determined. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. A minor's inability to pay shall not be considered a compelling or extraordinary reason not to impose a restitution order, nor shall inability to pay be a consideration in determining the amount of the restitution order. A restitution order . . . shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602, including all of the following: [¶] . . . [¶] (2) Medical expenses." (Welf. & Inst. Code, § 730.6, subd. (h).)

■ The purpose of a victim restitution order in a juvenile case is threefold: "to rehabilitate the defendant, deter future delinquent behavior, and make the victim whole by compensating him for his economic losses." (*Anthony M., supra*, 156 Cal.App.4th at p. 1017.) To achieve these purposes, the restitution order must be in an amount sufficient to fully compensate the victim "without regard to potential reimbursement from a third party insurer." (*Ibid.*; see *In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1387 [122 Cal.Rptr.2d 376] (*Brittany L.*); see also *People v. Birkett* (1999) 21 Cal.4th 226, 246 [87 Cal.Rptr.2d 205, 980 P.2d 912].) Similarly, it has been held that a victim whose medical treatment was covered by Medicare/Medi-Cal is entitled to restitution for the total costs that had been charged to his Medi-Cal file. (*People v. Hove* (1999) 76 Cal.App.4th 1266, 1272–1273 [91 Cal.Rptr.2d 128] (*Hove*).) "[T]he fortuity that the victim here was over age 65, and thus covered by Medicare, should not shield defendant from a restitution order which requires him to pay the full amount of the losses caused by his crime. . . . [¶] We therefore find the restitution order proper even though the victim had no direct economic losses, and even though the victim could conceivably profit from recovering restitution if defendant complies with the restitution order and if Medicare and/or Medi-Cal does not pursue reimbursement." (*Ibid.*; see also *Anthony M., supra*, 156 Cal.App.4th at pp. 1015–1019 [victim restitution properly ordered for amount of medical expenses that were paid by Medi-Cal].)

■ In this case, the victim was a member of Kaiser. Although the record is not explicit on this point, it is well known that Kaiser is an HMO "providing medical services to its members rather than a medical service provider with a conventional creditor-debtor relationship to its patients." (*K.F., supra*, 173 Cal.App.4th at pp. 663–664.) Assuming the victim was not obligated to pay Kaiser any amount above his membership fee in the HMO, charges were nonetheless incurred on his behalf as a result of appellant's criminal conduct. The fortuity that the victim had purchased membership in an HMO, like the fortuity that a victim has purchased third party insurance (*Brittany L., supra*, 99 Cal.App.4th at p. 1387), or the fortuity that a victim is covered by Medicare/Medi-Cal (*Hove, supra*, 76 Cal.App.4th at pp. 1272–1273), should not shield appellant from paying restitution for the medical expenses in this case.

A similar result was reached in *K.F., supra*, 173 Cal.App.4th at pages 662–665, although with some qualifications. The victim in *K.F.* had been treated by Kaiser for a broken finger suffered during an assault by a juvenile defendant and received a letter from Healthcare Recoveries advising him that Kaiser might have a right of reimbursement in the event he received a settlement from an insurance carrier or other third party. (*Id.* at p. 663.) Attached to the letter was a Consolidated Statement of Benefits similar to that provided in the instant case. The court concluded that this documentation amounted to substantial evidence that the victim had been billed for the services and had thus "incurred" the expenses within the meaning of Welfare and Institutions Code section 730.6. (*K.F.*, at p. 663.) But because the statement sent by Healthcare Recoveries purported to set forth "billed charges" in a specified amount, and because there was nothing in the record to contradict this description, the court found it "unnecessary, and indeed impossible, to consider the effect on criminal restitution of a victim's having received treatments for which he in fact *was not billed*." (*Id.* at p. 664.)

In *Duong, supra*, 180 Cal.App.4th at page 1539, the court went one step further when interpreting Penal Code section 1202.4, the restitution statute governing adult offenders. As in this case and *K.F.*, the victim in *Duong* was a member of Kaiser who received medical treatment there for injuries suffered in an assault by the defendant. (*Duong, supra*, at pp. 1535–1536.) Also as in this case, Healthcare Recoveries issued a " 'Consolidated Statement of Benefits' " describing the " 'Total Billed Charges' " and the " 'Total Benefits Provided,' " and advised that Kaiser would accept a reduction of 20 percent on all capitated charges. (*Id.* at p. 1536.) After surveying the case law concerning the policy behind the restitution statutes and the effect of third party payments, the court concluded that the cost of Kaiser medical services received by the victim should have been included in the restitution order. (*Id.* at pp. 1536–1539.) This was so whether or not the victim was obligated to pay any amount over and above her membership fee—i.e., it was not

necessary to show that Kaiser had billed her for the services. (*Id.* at p. 1539.) We are persuaded by the reasoning of *Duong* and see no reason it should not be extended to direct victim restitution orders made in juvenile court under Welfare and Institutions Code section 730.6, subdivision (h).

Having determined that victim restitution was properly based on the medical treatment the victim received at Kaiser, we consider the proper amount of that restitution. The parties agree that the Consolidated Statement of Benefits in the amount of $8,308.05 is a duplicate of the first page of the Consolidated Statement of Benefits in the amount of $40,311.85, and that the total amount charged by Kaiser is $40,311.85 rather than $48,619.90. Additionally, Healthcare Recoveries represented in its letter that Kaiser would accept a 20 percent reduction of this amount in settlement and would extinguish its lien for $32,249.48.

In *Duong*, the court concluded that the amount of restitution could not exceed the amount that Kaiser would accept as full payment for the medical services to the victim. (*Duong, supra,* 180 Cal.App.4th at pp. 1535, 1539–1540.) " 'To "fully reimburse" the victim for medical expenses means to reimburse him or her for all out-of-pocket expenses actually paid by the victim or others on the victim's behalf (e.g., the victim's insurance company). The concept of "reimbursement" of medical expenses generally does not support inclusion of amounts of medical bills in excess of those amounts accepted by medical providers as payment in full.' " (*Id.* at p. 1539, quoting *People v. Millard* (2009) 175 Cal.App.4th 7, 27 [95 Cal.Rptr.3d 751]; see also *People v. Bergin* (2008) 167 Cal.App.4th 1166, 1170 [84 Cal.Rptr.3d 700].) Similarly, in *Anthony M., supra,* 156 Cal.App.4th 1010, the court reduced a restitution order from the full amount billed by the health care providers to the amount that had been paid by Medi-Cal for those services. The court reasoned that by statute, a health care provider who accepted Medi-Cal funds as payment was precluded from billing the patient for any unpaid balance due; thus, the actual loss to the victim was limited to the lesser amount paid by Medi-Cal rather than the original amount billed by the providers. (*Id.* at pp. 1014, 1018.)

We agree with the reasoning of *Duong* and *Anthony M.* Although Kaiser provided services in the amount of $40,311.85, it was willing to accept $32,249.48 for those services. The amount of the loss attributable to treatment at Kaiser is the lesser figure of $32,249.48. Adding this amount to the $2,650.16 in additional restitution that was ordered for the victim's out-of-pocket expenses (an amount that has not been challenged in this appeal) we will modify the restitution order accordingly to a total of $34,899.64.

## DISPOSITION

The order requiring appellant to pay direct victim restitution under Welfare and Institutions Code section 730.6, subdivision (h) is modified to reflect a total restitution amount of $34,899.64. As so modified, the judgment is affirmed.

Simons, Acting P. J., and Bruiniers, J., concurred.

A petition for a rehearing was denied May 17, 2010, and appellant's petition for review by the Supreme Court was denied August 11, 2010, S183203. George, C. J., and Werdegar, J., did not participate therein.