Filed 5/2/13  In re Junior N. CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| In re JUNIOR N., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>JUNIOR N.,<br><br>     Defendant and Appellant. | A136155<br><br>(San Francisco City & County<br> Super. Ct. No. JW10-6554) |

The juvenile court adjudged defendant a ward of the court under Welfare and Institutions Code section 602, subdivision (a).  After a contested restitution hearing, the court ordered defendant to pay victim restitution in the amount of $3,246.80.  Defendant contends the lower court abused its discretion in issuing the restitution order because insufficient evidence in the record supports this amount.  We affirm the lower court's order.

### BACKGROUND

On August 1, 2011, a supplemental wardship petition (Welf. & Inst. Code, § 602, subd. (a)) was filed alleging defendant committed assault by means of force likely to cause great bodily injury (Pen. Code, § 245, subd. (a)(1)), and that defendant personally inflicted great bodily injury on another during the offense (Pen. Code, § 12022.7).  In count 2, the petition alleged that defendant made criminal threats (Pen. Code, § 422).

1

The underlying offense, as set forth in the probation report, stated that on July 1, 2011, the mother of Jermaine B. (the victim's mother) heard yelling outside her home and noticed that her 14-year-old son was on the ground. He was being kicked and punched by five youths, including defendant. A passerby rescued Jermaine and people detained the suspects. At a lineup, the victim's mother identified defendant as the primary aggressor in the assault of her son.

The police reports described Jermaine as slipping in and out of consciousness after the assault. He was diagnosed with a fractured nose and a fractured orbital bone below his left eye. He was throwing up uncontrollably during discharge from the hospital and it was discovered that he had a blood clot behind his left eye that had ruptured.

On February 15, 2012, defendant admitted the allegation that he committed assault by means of force likely to produce great bodily injury and that he personally inflicted great bodily injury. The criminal threat allegation was dismissed.

The probation officer submitted a claim for restitution on April 18, 2012. The mother of the victim submitted a handwritten claim that indicated she paid out-of-pocket medical bills in the amount of $8,067.62, she paid an eye doctor bill of $400, and she spent $50 for nasal spray and Visine. She also claimed that she lost $1,500 for missing a month of work to care for her son. Additionally, she requested $300 in gas expenses for transporting her son to his many medical appointments.

An "emergency rebill" from St. Luke's Hospital dated February 26, 2012, set forth charges in the amount of $8,067.62, and indicated a balance of zero due. The bill provided that the charge of $8,067.62 consisted of $61.62 for "NO HCPCS," $6,259 for "CT SCAN/HEAD," and $1,747 for "Emergency Room." This bill did not indicate that there had been any payments but clearly stated that a balance of zero was due.

Defendant's counsel submitted another "emergency rebill" from St. Luke's Hospital, dated April 26, 2012. This bill listed total charges in the amount of $8,067.62, consisting of $61.62 for "NO HCPCS," $6,259 for "CT SCAN/HEAD," and $1,747 for "Emergency Room." The bill indicated that the hospital had received payment of $410.59, and that there was an adjustment to deduct $7,657.03 for a balance of zero due.

2

The document named the San Francisco Health Plan as the insurance company and stated next to the payment of $410.59, "Payment SFHP Hill PHYS."

The prosecution argued that St. Luke's Hospital was paid a total of $646.80. It submitted a letter dated April 3, 2012, from the San Francisco Health Plan, which attached its record indicating that the San Francisco Health Plan had paid $236.21 to St. Luke's Hospital on July 1, 2011, for a "CT scan" of Jermaine's "head/brain" in the "Emerg[ency] Room Hospital." The prosecution argued that the total medical expenses paid to St. Luke's Hospital was the $236.21 on the San Francisco Health Plan's document plus the $410.59 indicated as paid on the bill from St. Luke's Hospital for a total of $646.80.

The juvenile court held the contested hearing on restitution on July 11, 2012. Defense counsel argued that the total medical restitution should be $410.59, the sum St. Luke's Hospital reported it was paid on the "rebill" dated April 26, 2012. Defense counsel argued that $236.21 was paid by the San Francisco Health Plan and the balance of $174.38 was paid by Medi-Cal.

The prosecution countered that the court should award a total of $1,236.80 in medical expenses. This sum included $600 for eye care and medical supplies, plus the $236.21 paid by the San Francisco Health Plan, and the $410.59 paid to St. Luke's Hospital. The prosecution insisted that the $236.21 was "not subsumed in the $410.59" and represented a separate amount.

At the end of the hearing, the juvenile court found that the prosecution's evidence supported a restitution award of $1,246.80 for medical costs. The court explained that the severity of the injuries and the numerous hospital visits and necessary treatments made this "an extremely reasonable amount." The court added: "So this is a reasonable amount in addition to supporting documents that have been provided by the district attorney." This sum included $236.21 paid by the San Francisco Health Plan, $410.59 paid to St. Luke's Hospital, $400 for services at Premier Eye Care, and $200 for medical supplies. The court also awarded Jermaine's mother $1,500 in lost income, $300 in

3

transportation costs, and $200 for ongoing medical costs.  Thus, the court ordered defendant to pay victim restitution of $3,246.80.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant's sole argument on appeal is that the $3,242.86 victim restitution award should be reduced by $236.21 and thus the award should be $3,006.65.  He maintains that insufficient evidence supports a finding that St. Luke's Hospital received $646.80 in payment and that the record demonstrates that it received only $410.59.

"In 1982, by initiative, the voters of California added a provision to the state Constitution establishing a new constitutional right:  the right of every crime victim to obtain restitution from the perpetrator of the crime for losses suffered."  (*People v. Crow* (1993) 6 Cal.4th 952, 956.)  This constitutional provision directed the Legislature to enact implementing legislation.  (*Ibid.*)  Welfare and Institutions Code section 730.6 is one of the implementing statutes.[1]  (*In re Tommy A.* (2005) 131 Cal.App.4th 1580, 1587.)  Section 730.6 "governs restitution in cases where a minor is adjudicated a ward of the court pursuant to section 602."  (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1131.)

When a minor is adjudged a ward of the court, the juvenile court must order restitution to reimburse a victim for "any economic loss" resulting from the minor's conduct bringing him within the court's jurisdiction.  (§ 730.6, subd. (a)(1).)  Economic loss includes medical expenses.  (§ 730.6, subd. (h)(2).)  In determining the amount of the victim's economic loss, subdivision (h) of section 730.6 declares that restitution "shall be imposed in the amount of the losses, as determined. . . .  A restitution order . . . shall be of a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct . . . ."

Courts have broad power to impose conditions to foster rehabilitation and to protect public safety.  (*In re I.M.* (2005) 125 Cal.App.4th 1195, 1208-1209.)  In a juvenile case, the purposes of ordering victim restitution are to rehabilitate the defendant,

---

[1]  All further unspecified code sections refer to the Welfare and Institutions Code.

4

deter future delinquent behavior, and make the victim whole through compensation for his or her economic losses. (*In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1017.)

"[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt." (*People v. Baker* (2005) 126 Cal.App.4th 463, 469.) A restitution order will not be overturned in the absence of an abuse of discretion. (*In re T.C.* (2009) 173 Cal.App.4th 837, 843.) When there is a factual and rational basis for the restitution ordered, no abuse of discretion will be found by the reviewing court. (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.)

"[T]he court may use any rational method of fixing the amount of restitution, provided it is reasonably calculated to make the victim whole, and provided it is consistent with the purpose of rehabilitation. In doing so ' " '[s]entencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes.' . . ." . . . [¶] This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution.' " (*In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1391-1392, fns. omitted.) Thus, the restitution order must be in an amount sufficient to reimburse the victim fully for economic losses incurred as a result of the juvenile's criminal conduct without regard to potential reimbursement to the victim from sources distinct and independent of the defendant (*People v. Bernal* (2002) 101 Cal.App.4th 155, 166), such as payment by the victim's private insurance carrier (*In re Brittany L.,* at p. 1389) or by Medi-Cal (*People v. Hove* (1999) 76 Cal.App.4th 1266, 1272).

Defendant argues that the record is devoid of any evidence to support a finding that St. Luke's Hospital received $646.80. He maintains that the evidence shows that it received no more than $410.59. Courts, according to defendant, have consistently held that restitution for medical bills must be the amount accepted by the provider, not the amount billed. (See *In re Eric S.* (2010) 183 Cal.App.4th 1560, 1563-1566 [modified restitution order to include as the cost of medical services the amount the hospital was willing to accept rather than the total amount billed]; *People v. Duong* (2010) 180 Cal.App.4th 1533, 1539 [amount of restitution cannot exceed the amount the hospital

would accept as full payment for medical services to victim]; *People v. Millard* (2009) 174 Cal.App.4th 7, 27-29 [restitution for medical expenses should be limited to expenses actually paid by the victim or others on the victim's behalf]; *People v. Bergin* (2008) 167 Cal.App.4th 1166, 1169-1172 [restitution award should be limited to amounts paid by medical insurer, rather than the amounts billed by the medical providers]; *In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1017 [reversed restitution of more than $1 million and limited the amount ordered to the sums paid by Medi-Cal].)

In the cases cited by defendant, there was no dispute regarding the actual medical bills paid. Rather, the issue was whether the restitution order should be limited to the medical expenses actually paid to prevent a windfall to the victim.

Here, the juvenile court issued an order based on what it determined was the amount paid to St. Luke's Hospital. The court clearly did not base the order on the amount charged, as that amount exceeded $8,000. After examining the documents and hearing argument, the court rejected defendant's argument that the amount paid to St. Luke's Hospital was $410.50 rather than $646.80.

Defendant produced the rebill from St. Luke's Hospital stating that $410.59 had been paid and there was a balance of zero remaining. The bill indicated that the total charges were $8,067.62, the adjustments were minus $7,657.03, and the payment was minus $410.59, leaving the amount due as zero. The rebill further stated that the total "AR Adjustments and Payments" were $8,067.62. Defendant maintains that this document shows that the $8,067.62 was adjusted and that St. Luke's Hospital accepted a settlement offer for payment of $410.59. He asserts that the prosecution presented no evidence to refute that a settlement occurred.

Contrary to defendant's argument, the record does not demonstrate that St. Luke's Hospital accepted $410.59 as full payment for the services the victim received. There is no requirement "that the victim must supply a sworn proof of loss or detailed documentation of costs and expenses." (*In re S.S.* (1995) 37 Cal.App.4th 543, 547, fn. 2.) Here, the prosecution met its burden of presenting prima facie evidence of payments for emergency care costs for the total of $646.80 when it submitted St. Luke's Hospital bill

6

indicating $410.59 had been paid and the San Francisco Health Plan document establishing that it paid $236.21.  The burden then shifted to defendant to show that St. Luke's Hospital received the sum of $410.59, and no more.

Defendant's sole evidence consisted of the bills from St. Luke's Hospital and these bills did not prove that the hospital received only $410.59.  The bill from St. Luke's Hospital dated February 26, 2012, indicated total medical expenses in the sum of $8,067.62.  This bill had no indication that a payment was made but stated that the amount due was zero.  Thus, the fact that the bill dated April 26, 2012, also indicated a balance of zero after receiving a payment of $410.59, did not establish that no further payments or adjustments were to be made to the account.  The amount of $410.59 clearly did not match the amount the San Francisco Health Plan reported paying in its document submitted on April 3, 2012.  Thus, it is unclear what entities paid the $410.59 and whether this sum excluded or included the $236,21 paid by the San Francisco Health Plan.  Defendant argued in the juvenile court that Medi-Cal paid the balance of $174.38, but presented no evidence to support this assertion.  Defendant also failed to produce any settlement agreement establishing that St. Luke's Hospital accepted $410.59, and no more, as full payment for the victim's care.

We conclude that the juvenile court did not abuse its discretion in finding that the medical cost incurred included the amount of $410.59, reflected in the bill from St. Luke's Hospital, plus the amount of $236.21, set forth in the document submitted by the San Francisco Health Plan.  Accordingly, we conclude that the court did not abuse its discretion in ordering defendant to pay victim restitution of $3,246.80.

## DISPOSITION

The juvenile court's order is affirmed.

_____
Lambden, J.

We concur:

_____
Kline, P.J.

_____
Haerle, J.

8