Filed 10/16/14  In re Oscar F. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**COPY**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| In re OSCAR F., a Person Coming Under the Juvenile Court Law. | C072309 |
| THE PEOPLE, | (Super. Ct. No. J5701) |
| Plaintiff and Respondent, | |
| v. | |
| OSCAR F., | |
| Defendant and Appellant. | |

Appellant, Oscar F., appeals the juvenile court's order of restitution.  The court imposed a 15 percent administrative fee, or approximately $20,000, in addition to $135,032.12 in direct victim restitution.  Oscar F. contends the 15 percent administrative

1

fee is unauthorized by statute and must be stricken.  Oscar F. also argues insufficient evidence supports the $135,032.12 victim restitution award.

We agree the 15 percent administrative fee on the victim restitution award was improper and that insufficient evidence supports the restitution award.  We therefore reverse the order and remand for further proceedings to allow the juvenile court to determine the actual cost paid for the medical services rendered to the victim, rather than the amount billed by the medical providers, and to issue a revised order of restitution.

FACTS AND PROCEEDINGS

A detailed recitation of the facts underlying Oscar F.'s offense is unnecessary to resolve this appeal.  Briefly summarized, Oscar F. and another individual assaulted Adam M. with a metal bar in Lassen County, California.  Adam M. sustained major injuries, including facial lacerations, fractures, and a bleed in his brain.  Although initially treated in Susanville, due to the extent of his injuries, Adam M. was transferred to medical facilities in Reno, Nevada, for treatment.

Oscar F. had previously been declared a ward of the court pursuant to Welfare and Institutions Code section 602[1] for possessing a pocket knife and marijuana at school.  On May 7, 2012, a second section 602 juvenile wardship petition (602 petition) was filed in Lassen County juvenile court alleging Oscar F. assaulted Adam M. with a deadly weapon.  (Pen. Code, § 245, subd. (a)(1) [count 1].)

Oscar F. admitted the allegations of the 602 petition.  At the dispositional hearing, the juvenile court continued Oscar F. as a ward of the court, ordered him to serve a variable commitment of between nine and 18 months and to complete the program at the Bar-O-Boys Ranch, and ordered Oscar F. to perform 200 hours of community service.  The court reserved jurisdiction over the issue of victim restitution.

---

[1] All unspecified statutory references are to the Welfare and Institutions Code.

2

Following a contested hearing on the victim restitution issue, the court ordered Oscar F. to pay $135,032.12 in victim restitution jointly and severally with his parents, a codefendant, and the codefendant's parents. The court also imposed a 15 percent administrative fee pursuant to Penal Code section 1203.1, subdivision (l), which equaled approximately $20,000. Oscar F. timely appealed.

## DISCUSSION

### I.

### *Standard of Review*

An appellate court reviews a challenge to the amount of victim restitution for abuse of discretion. (*People v. Taylor* (2011) 197 Cal.App.4th 757, 761; see also *In re K.F.* (2009) 173 Cal.App.4th 655, 661.) If, however, "the propriety of a restitution order turns on the interpretation of a statute, a question of law is raised, which is subject to de novo review on appeal." (*People v. Williams* (2010) 184 Cal.App.4th 142, 146; *In re Alexander A.* (2011) 192 Cal.App.4th 847, 852.)

Oscar F.'s challenge to the restitution order is two-fold. He first claims that the court lacked statutory authority to award the 15 percent administrative fee altogether. Oscar F. therefore raises a purely legal issue of statutory interpretation that is resolved by de novo review. Oscar F.'s second contention--that the record lacks substantial evidentiary support for the $135,032.12 victim restitution award--challenges the *amount* of victim restitution, which may only be set aside if the trial court abused its discretion in making the award. With these principles in mind, we consider the merits of Oscar F.'s appeal.

3

## II.

*The 15 Percent Administrative Fee on the Victim Restitution Amount*

Oscar F. first argues that the juvenile court lacked statutory authority to impose the 15 percent administrative fee related to its order of restitution to the victim. We agree.

At the outset, we must determine which statute governs Oscar F.'s restitution obligations in this case. The trial court cited Penal Code section 1203.1, subdivision (l) as the basis for imposing the 15 percent administrative fee. That statute, however, governs restitution for adult offenders. (*People v. Birkett* (1999) 21 Cal.4th 226, 234 [Penal Code section 1203.1 governs an adult probationer's liability for restitution to his crime victims] (*Birkett*).) Oscar F. is a minor who was declared a ward of the court pursuant to section 602. Oscar F.'s restitution obligations are therefore governed by section 730.6. (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1131 ["Section 730.6 governs restitution in cases where a minor is adjudicated a ward of the court pursuant to section 602"].); Penal Code section 1203.1 simply does not apply to Oscar F.

While the juvenile court erroneously relied on Penal Code section 1203.1 to impose the administrative fee, we may sustain the court's decision without embracing its reasoning. (*People v. McDonald* (2006) 137 Cal.App.4th 521, 529.) Thus, we may affirm the ruling if it is correct on any theory of the law applicable to the case, even if the ruling was made for an incorrect reason. (*Ibid.*) We turn to the statute governing juvenile restitution, section 730.6, to determine whether that statute authorized the juvenile court to impose an administrative fee to collect the victim restitution award.

Under that statute, a juvenile court may order a minor to pay restitution to a victim who incurs any economic loss as a result of the minor's conduct. (§ 730.6, subd. (a)(1); *In re Eric S.* (2010) 183 Cal.App.4th 1560, 1562 ["Welfare and Institutions Code section 730.6 requires a juvenile ward to pay victim restitution for economic losses incurred as a result of the ward's criminal conduct"].) Section 730.6, subdivision (a)(2) requires the

4

juvenile court to order a restitution fine and victim restitution.  (§ 730.6, subd. (a)(2).)
Subdivision (q) expressly allows the juvenile court to impose a "fee to cover the actual
administrative cost of collecting the restitution *fine*, not to exceed 10 percent of the
amount ordered to be paid."  (§ 730.6, subd. (q) [italics added].)  The statute, however, is
silent regarding the imposition of fees to cover costs related to victim restitution.  (*Ibid.*)

When interpreting a statute, we must ascertain the Legislature's intent so as to
effectuate the law's purpose.  (*People v. Franco* (2009) 180 Cal.App.4th 713, 720.)  In
determining this intent, we first consider the words of a statute, being careful to give
them their usual, ordinary meaning.  (*People v. Carron* (1995) 37 Cal.App.4th 1230,
1236.)  We do not, however, consider statutory language in isolation.  (*Franco, supra,*
180 Cal.App.4th at p. 720.)  Instead, we consider a statute's entire substance to determine
the scope and purpose of the provision.  (*Id.* at p. 721.)  " ' "That is, we construe the
words in question ' "in context, keeping in mind the nature and obvious purpose of the
statute. . . ." ' " [Citation.] ' " (*Ibid.*)  If an ambiguity exists, " 'we may consider a
variety of extrinsic aides, including legislative history, the statute's purpose, and public
policy' " when construing the statute.  (*Ibid.*)  But if the statute is "not ambiguous, the
plain meaning controls and resort to extrinsic sources to determine the Legislature's
intent is unnecessary."  (*In re Jennings* (2004) 34 Cal.4th 254, 263.)

Here, nothing in the language or purpose of section 730.6 leads us to believe that
the Legislature's omission of an administrative fee for victim restitution was anything but
a deliberate choice.  Had the Legislature intended for a restitution collection fee, it would
have expressly so stated like it did in section 730.6, subdivision (q) regarding the
restitution *fine*.  Under the circumstances, we will not "insert what has been omitted"
from the statute.  (Code Civ. Proc., § 1858; see also *People v. Woodhead* (1987)
43 Cal.3d 1002, 1010 ["when the drafters of a statute have employed a term in one place
and omitted it in another, it should not be inferred where it has been excluded"].)

We decline the People's invitation to interpret the omission as a mere legislative oversight. In 1994, the Legislature amended the laws regarding restitution by adult offenders and, at the same time, "amended the Welfare and Institutions Code to provide parallel restitutionary requirements for juvenile offenders." (*Birkett, supra,* 21 Cal.4th at pp. 240-241 & fn. 15 [discussing juvenile offenders' liability for direct victim restitution to fully compensate the victim's economic losses as a result of their criminal conduct].) The statutes that govern adult offenders' restitution obligations explicitly authorize fees when either restitution fines or victim restitution are imposed. (Pen. Code, §§ 1202.4, subd. (l) & 1203.1, subd. (l).) Had the Legislature intended to permit fees in addition to victim restitution in juvenile cases, it would have expressly done so, as it did with respect to adult offenders.

The People's reliance on *In re Imran Q.* (2008) 158 Cal.App.4th 1316, does not persuade us otherwise. *Imran* dealt with direct victim restitution--the recovery of attorneys' fees and costs spent to collect the victim's economic losses--rather than administrative fees. (*Imran* at pp. 1320-1321.) The court held the juvenile restitution statute's failure to mention attorneys' fees and costs when defining economic losses was a legislative oversight given that the adult restitution statute contained such language. (*Ibid.*) *Imran*, however, did not address administrative fees, which do not constitute recognized economic losses like the attorneys' fees and costs to recover a restitution award at issue in *Imran*. (*Elisa B. v. Superior Court* (2005) 37 Cal.4th 108, 118 ["an opinion is not authority for a proposition not therein considered"].)

Because section 730.6 does not expressly authorize a juvenile court to impose a 15 percent administrative fee on direct victim restitution awards against juvenile offenders, and since we decline to imply such authority given the Legislature's deliberate omission, we conclude the court below erred in ordering Oscar F. to pay a 15 percent administrative fee on the $135,032.12 restitution award. We therefore strike the 15 percent administrative fee as unauthorized.

6

Given our conclusion that the 15 percent administrative fee was improper, we need not address Oscar F.'s alternative argument that the county lacked authority to collect an administrative fee calculated as a fixed percentage of the total amount of victim restitution ordered.

## III.

### *Sufficiency of the Evidence to Support the Restitution Award*

Oscar F. next contends the record lacks substantial evidence to support the $135,032.12 victim restitution award. According to Oscar F., the court erred by awarding Adam M. restitution in the amount of the billed medical expenses rather than a purported lesser amount that Medi-Cal[2] or other private insurance paid for the services rendered.

We agree that a victim, like Adam M. here, whose medical expenses are paid through Medi-Cal or some other form of private insurance, may recover as restitution no more than the actual amount paid for the medical services provided even if that amount is less than the amount originally billed by the medical provider. (See *Howell v. Hamilton Meats & Provisions, Inc.* (2011) 52 Cal.4th 541, 566 (*Howell*) ["an injured plaintiff whose medical expenses are paid through private insurance may recover as economic damages no more than the amounts paid by the plaintiff or his or her insurer for the medical services received or still owing at the time of trial"].) On this record, we cannot determine whether the trial court calculated the victim restitution award using the proper form of damages--paid amounts versus billed amounts. We therefore reverse the restitution order and remand for the juvenile court to issue a new restitution order, which shall include only those amounts paid by the victim or his or her insurance or Medi-Cal for the medical services he received as a result of Oscar F.'s criminal conduct.

---

[2] "Medi-Cal is California's medical assistance program, which pays medical costs for financially needy persons." (*In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1018.)

A "victim's economic losses for medical expenses under section 730.6 are limited to the amount of medical expenses paid or incurred by the victim. . . ." (*In re Anthony M., supra,* 156 Cal.App.4th at p. 1015.) " '[A]n award of damages for past medical expenses in excess of what the medical care and services actually cost constitutes overcompensation.' " (*People v. Bergin* (2008) 167 Cal.App.4th 1166, 1171-1172 [crime victim incurred loss only in the amount the medical provider accepted as payment from private insurance].) The concept of reimbursement for medical expenses, then, "generally does not support inclusion of amounts of medical bills in excess of those amounts accepted by medical providers as payment in full." (*In re Eric S., supra,* 183 Cal.App.4th at p. 1566; see also *Howell, supra,* 52 Cal.4th at p. 566 [recoverable medical expenses are the amounts paid by the victim or through private insurance]; *Hanif v. Housing Authority* (1988) 200 Cal.App.3d 635, 640-641 [Medi-Cal beneficiary may recover as damages from the tortfeasor only the amount Medi-Cal paid on his behalf].)

In this case, the probation department recommended restitution for the victim's medical bills of $129,275.82. The probation department attached the victim's medical bills to justify the amount of the recommended restitution award. At the restitution hearing on September 27, 2012, the parties stipulated to admission of a memorandum (Exhibit 1) prepared by the victim's mother listing the victim's medical bills up through September 20, 2012, as well as certain out-of-pocket expenses personally incurred by Adam M.'s mother. Exhibit 1 showed the total amounts billed equaled $136,648.92, which included the mother's out-of-pocket expenses.

The prosecutor informed the court that with the exception of item 1, which was a bill from Banner Lassen Medical Center in the amount of $13,558, Medi-Cal had refused to cover the items listed on Exhibit 1 because the medical services and care rendered to Adam M. were provided in Nevada and not California. Since the medical services for item 1 were rendered in California, the victim's mother intended to submit that bill to Medi-Cal for reimbursement. At the time of the restitution hearing, however, she had not

8

yet submitted the bill. The prosecutor also stated that the mother's insurance would cover the remaining bills listed on Exhibit 1.

Defense counsel joined in the prosecutor's offer of proof and stipulated to the above facts. Defense counsel objected only to items 16 and 17, which were the mother's out-of-pocket expenses. Based on this evidence and the parties' stipulations, the court subtracted items 16 and 17 from the total and awarded victim restitution in the amount $135,032.12.

Since the bill from Banner Lassen Medical Center had not been submitted to Medi-Cal when the juvenile court entered the restitution order, there was no way to know the final payment amount. (*In re Anthony M., supra,* 156 Cal.App.4th at p. 1019 [trial court could not determine the total cost of the medical expenses because Medi-Cal had not made its final payment at the time of the restitution hearing].) Because Medi-Cal "payments are typically lower than the amounts normally charged by providers for their services" (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 812), it is highly likely that Medi-Cal may reimburse Banner Lassen for less than the $13,558 amount that was billed. The court therefore erred in including the billed amount in the restitution order rather than the amount actually paid by Medi-Cal, which was yet to be determined.

Similarly, the record contains no evidence showing the mother's insurance has paid or will pay the full amounts billed by the medical providers for the remaining items listed on Exhibit 1. While it is true the prosecutor said her insurance would cover the bills, the record is silent on what the prosecutor actually meant by that phrase. Covering the bills does not necessarily equate to paying the bills in full. It is well recognized that medical providers often agree to accept an amount less than that stated in their bill as full compensation for services rendered to an injured person. (*Howell, supra,* 52 Cal.4th at p. 548 ["When a tortiously injured person receives medical care for his or her injuries, the provider of that care often accepts as full payment, pursuant to a preexisting contract with the injured person's health insurer, an amount less than that stated in the provider's

9

bill"].) Thus, without knowing these final payment amounts at the restitution hearing, the trial court lacked the ability to impose an appropriate restitution award. (*In re Anthony M., supra,* 156 Cal.App.4th at p. 1019 [trial court could not determine the total cost of the medical expenses because Medi-Cal had not made its final payment at the time of the restitution hearing].)

The Legislature provided for that possibility in section 730.6, subdivision (h), which states that "[i]f the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court at any time during the term of the commitment or probation." (§ 730.6, subd. (h).) We shall therefore reverse the order and remand the matter for further proceedings to determine the total amount paid by the victim, Medi-Cal, or private insurance for the medical services Adam M. received.

DISPOSITION

The order of restitution is reversed and the matter is remanded to the juvenile court for further proceedings to determine the actual amount paid for the medical services rendered to Adam M. Upon determining the appropriate amount, the court shall enter a revised order of restitution. The revised restitution order shall not include a 15 percent administrative fee on the victim restitution award.


                                                    HULL            , Acting P.J.


We concur:


      ROBIE            , J.


      MURRAY          , J.


10