[No. E022305. Fourth Dist., Div. Two. Dec. 14, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
SCOTT ANDREW HOVE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 4.

**COUNSEL**

James R. Mc Grath, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle M. Boustany and Marilyn L. George, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HOLLENHORST, J.**—In this case, we apply the principles stated by our Supreme Court in *People* v. *Birkett* (1999) 21 Cal.4th 226 [87 Cal.Rptr.2d 205, 980 P.2d 912] and conclude that the trial court did not err in ordering victim restitution in the full amount of the economic loss (in this case medical expenses) caused by defendant's criminal conduct, even though the victim had no actual economic losses because the victim's medical expenses were paid by Medicare and/or Medi-Cal benefits.

### 1. FACTS[1]

On May 18, 1996, defendant Scott Andrew Hove was driving his car on the wrong side of the road in the Chino Hills area when he struck Guadalupe Prieto. Mr. Prieto, then age 65, was transported to Loma Linda University Medical Center by helicopter. He was treated for substantial injuries and, at the time of the probation report, he was totally incapacitated in a vegetative state. His prognosis is poor and he will always require long-term care in a subacute nursing facility.[2]

Defendant was given various field sobriety tests at the scene of the accident. Those tests indicated that he was under the influence of a controlled substance. Defendant subsequently gave a blood sample, which tested positive for methamphetamine. He was arrested and charged with driving a motor vehicle while under the influence of a controlled substance, in violation of Vehicle Code section 23153, subdivision (a), and proximately causing injury to Mr. Prieto.

Four prior felony convictions for residential burglary were alleged under the "Three Strikes" law. (Pen. Code, § 667, subds. (b)–(i).) Defendant subsequently entered into a plea bargain in which he pled guilty to the

---

[1]The facts are taken from the probation report.

[2]Sadly, we note that Mr. Prieto had just retired two weeks earlier after working 20 years as a laborer. According to some witnesses, Mr. Prieto was carrying his grandson at the time of the accident. His grandson was thrown to safety upon impact.

crime charged and admitted one prior strike conviction. The form he signed also states his understanding that the maximum punishment he could receive includes: "A FINE up to $10,000.00 and actual Restitution or a fine of up to $10,000 plus a Restitution fine up to $10,000."

The trial court accepted the plea and sentenced defendant to four years in prison. It imposed two restitution fines of $500 each under Penal Code sections 1202.45 and 1202.4, respectively. It also set a hearing to determine the amount of actual restitution. Defendant waived his right to be present at that hearing.

At the restitution hearing, the court received a memorandum from the probation officer which detailed the costs that had been charged to Mr. Prieto's Medi-Cal claims file. The memorandum showed that the total amount of Medi-Cal claims billed through December 11, 1997, was $286,565.92. The victim's daughter told the probation officer that there was no monetary loss to the family because all of the medical bills were paid by Medicare and Medi-Cal. However, the trial court ordered victim restitution of $286,565.92.

Defendant appeals the restitution order, contending (1) the order for actual restitution has no statutory basis because the victim did not suffer any economic loss; (2) the restitution order is not supported by substantial evidence; (3) defendant's right to be present at the restitution hearing was violated; and (4) the restitution order violates the plea agreement.[3]

## 2. WAS THE RESTITUTION ORDER PROPER?

California Constitution, article I, section 28, subdivision (b) states: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer. [¶] Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary. The Legislature shall adopt provisions to implement this section during the calendar year following adoption of this section."

---

[3]We asked the parties for additional briefing on the question of whether the restitution order was proper under *Birkett*, as required by Government Code section 68081. The parties have submitted additional briefing as requested.

Implementing legislation was passed and, at the time of the crime, former Penal Code section 1202.4 was effective.[4] That section provided, in relevant part: "(a)(1) It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime. [¶] . . . [¶] (3) The court, in addition to any other penalty provided or imposed under the law, shall order the defendant to pay both of the following: [¶] . . . [¶] (B) Restitution to the victim or victims, if any, in accordance with subdivision (f). [¶] . . . [¶] (f) In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims. . . . [¶] (g) Restitution ordered pursuant to subdivision (f) shall be imposed in the amount of the losses, as determined. The court shall order full restitution unless it finds clear and compelling reasons for not doing so, and states them on the record. *Determination of the amount of restitution ordered pursuant to this section shall not be affected by the indemnification or subrogation rights of third parties. Restitution shall, to the extent possible, be of a dollar amount that is sufficient to fully reimburse the victim or victims, for every determined economic loss incurred as the result of the defendant's criminal conduct, including all of the following: [¶] . . . [¶] (2) Medical expenses.*" (Stats. 1995, ch. 313, § 5, italics added.)

In *Birkett*, our Supreme Court considered "whether the 1994 laws governing mandatory restitution as a condition of adult probation gave insurers a *right* to restitution insofar as they had reimbursed their insureds for crime-related losses, and . . . if not, whether trial courts nonetheless had *discretion* to allocate mandatory probationary restitution awards between insurers and insureds to reflect such reimbursements." (*People* v. *Birkett, supra,* 21 Cal.4th 226, 228.)

The court answered both questions negatively, finding that the version of Penal Code section 1203.04 in effect in November 1994, the time of defendant's crimes, did not give insurers a right to restitution of any amounts paid to reimburse the crime-related losses of their policyholders. (*People* v. *Birkett, supra,* 21 Cal.4th 226, 229.) Nor did the statute permit a trial court to order restitution to insurers because the statute "gave 'direct victim[s]' a right to restitution based on the *full amount* of their losses, without regard to full or partial recoupments from other sources . . . ." (*Id.,* at p. 229, original italics.)

---

[4]As in *Birkett,* we apply the restitution law in effect on the date of the crime, in this case May 18, 1996. (*People* v. *Birkett, supra,* 21 Cal.4th 226, 232, fn. 21.) The crime in *Birkett* occurred in November 1994, and the Supreme Court applied former Penal Code section 1203.04, governing restitution in adult probation cases. That section was repealed by the 1995 amendments. (Stats. 1995, ch. 313, § 8.)

*Birkett* is not direct authority here because (1) it concerns a defendant who was granted probation; (2) it was decided under a different restitution statute (former Pen. Code, § 1203.04); and (3) it deals with the rights of a private insurer.

Nevertheless, we find the reasoning of the case dispositive because our Supreme Court held that the 1994 statutory scheme gave direct victims a right to restitution based on the full amount of their losses, without regard to full or partial recoupments from other sources except the Restitution Fund. (*People* v. *Birkett, supra*, 21 Cal.4th 226, 228-229.) Its holding that the 1994 statutory scheme created an "inescapable inference" that the right to restitution did not extend to insurance companies is consistent with the 1995 amendments, quoted above, which expressly provided that the amount of the restitution should not be affected by the existence of indemnification or subrogation rights. (*Id.,* at p. 233.)

*Birkett* also reviews the statutory history of mandatory restitution in nonprobationary cases. (*People* v. *Birkett, supra,* 21 Cal.4th 226, 235-237.) In particular, it discusses *People* v. *Broussard* (1993) 5 Cal.4th 1067 [22 Cal.Rptr.2d 278, 856 P.2d 1134], which held that the term "victim" as used in former Penal Code section 13967 was not limited to persons who were killed or injured, but also included persons who had only suffered an economic loss. (*Birkett, supra,* at pp. 235-236, 238-239.)

The court also discusses *People* v. *Crow* (1993) 6 Cal.4th 952 [26 Cal.Rptr.2d 1, 864 P.2d 80], in which a county welfare agency was held to be a direct victim of fraud. The *Crow* court spoke in terms of " '. . . loss flowing from a defendant's criminal conduct . . . ,' " saying " '. . . the concept of restitution embodies not only the notion that people who suffer loss as a result of criminal activity should be compensated for those losses [citation], but also a perception of the value of restitution as a "deterrent to future criminality" [citation], and "to rehabilitate the criminal." [Citation.] . . .' " (*Id.,* at p. 957.)

Similarly, in *Birkett,* after holding that an insurance company did not become a direct victim of crime entitled to restitution, our Supreme Court considered whether the trial court nevertheless had the discretion to allocate restitution between the victim and an insurance company. It held that the trial court did not have such discretion because the 1994 statutory scheme gave the victim the right to recovery of the full amount of his losses, regardless of insurance payments. (*People* v. *Birkett, supra,* 21 Cal.4th 226, 228-229, 245-246.) It found that the legislation "made clear that . . . the *immediate victim* of the probationer's crime was entitled to receive restitution 'directly' from the probationer for the *full amount* of the loss caused by

the probationer's criminal conduct." (*Id.,* at p. 245.) Thus, it quoted the language of former Penal Code section 1203.04, which is similar to the language of former Penal Code section 1202.4 quoted above. The court then concluded with language we find dispositive here: "It appears clear from this language that the Legislature intended to require a probationary offender, for rehabilitative and deterrent purposes, to make *full* restitution for all 'losses' *his crime had caused, and* that such reparation should go entirely to *the individual or entity the offender had directly wronged,* regardless of that victim's reimbursement from other sources. . . . [¶] Thus, except as against the Restitution Fund, the immediate victim was entitled to receive from the probationer the full amount of the loss caused by the crime, regardless of whether, in the exercise of prudence, the victim had purchased private insurance that covered some or all of the same losses. . . . [¶] Again, this result is neither absurd nor contrary to Proposition 8. As noted above, the Legislature could rationally conclude that the criminal restitution scheme should always require the offender to pay the full cost of his crime, receiving no windfall from the fortuity that the victim was otherwise reimbursed, but that the rights of reimbursing third parties, aside from the state's own Restitution Fund, should be resolved in other contexts." (*Birkett, supra,* at p. 246, original italics.) Accordingly, the court concluded that the probationary order violated the statute. However, the court noted that ". . . the order correctly required defendant to make restitution of the full amount of the losses determined to have been caused by the crimes to which he pled guilty . . . ." (21 Cal.4th at p. 247, fn. omitted.)

■ Applying the stated principles, we conclude that the fortuity that the victim here was over age 65, and thus covered by Medicare, should not shield defendant from a restitution order which requires him to pay the full amount of the losses caused by his crime. Nor should the payment of medical bills by Medi-Cal allow defendant to escape responsibility for the losses he caused.[5] As *Birkett* notes, the Legislature could rationally conclude that defendant should bear the burden of the medical costs of his victim, rather than society generally. (*People* v. *Birkett, supra,* 21 Cal.4th 226, 246.)

We therefore find the restitution order proper even though the victim had no direct economic losses, and even though the victim could conceivably

---

[5]It is not clear from the record which benefits the victim received, although the restitution order was based on a Medi-Cal claim computation.

Medicare is, of course, a federal health insurance program for persons age 65 and over.

Medi-Cal is a medical cost assistance program that pays medical costs for financially needy persons. (*California Medical Assn.* v. *Brian* (1973) 30 Cal.App.3d 637, 642 [106 Cal.Rptr. 555].) The Medi-Cal statute authorizes the department to file a claim against the estate of a beneficiary to recover benefits paid in some circumstances. (Welf. & Inst., Code § 14009.5; see generally, 1 Cal. Elder Law (Cont.Ed.Bar 1995) ch. 10.) Thus, any restitution paid by defendant to the victim would be potentially subject to a Medi-Cal reimbursement claim. The department may, of course, proceed against defendant directly under the third party liability statutes. (Welf. & Inst. Code, § 14124.70 et seq.)

profit from recovering restitution if defendant complies with the restitution order and if Medicare and/or Medi-Cal does not pursue reimbursement.

In addition to compensating the victim, the restitution order is proper because of the value of such an order as a means of rehabilitating defendant and deterring defendant and others. (*People* v. *Crow, supra,* 6 Cal.4th 952, 957.)[6] "Although based in part on the harm caused to the victim [citation], restitution is imposed primarily for the benefit of the state to promote the state's interests in rehabilitation and punishment. [Citation.] Among other things, California's restitution law ensures that amends are made to society for a breach of the law, serves a rehabilitative purpose, and acts as a deterrent to future criminality. [Citations.] Restitution 'is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine.' [Citations.]" (*People* v. *Moser* (1996) 50 Cal.App.4th 130, 135-136 [57 Cal.Rptr.2d 647].)

We thus agree with the trial court: "It is the Court's belief that the [L]egislature intended that [the] defendant in a criminal matter pay for the total costs of the damages that that particular defendant caused . . . . [¶] And, in addition, that the [L]egislature did recognize that often times victims had insurance and that the Court was not to be concerned by the fact that a

---

[6]We therefore find that the reasoning of *Birkett* supersedes the earlier cases relied on by defendant.

In *People* v. *Ortiz* (1997) 53 Cal.App.4th 791 [62 Cal.Rptr.2d 66], the defendant sold counterfeit tapes, and the trial court calculated a restitution amount. The appellate court found that the restitution statute required that the victim suffer a loss as a result of the commission of a crime, and the amount of the loss must be determined by the court. It further held that the trial court did not abuse its discretion in determining the amount of the loss.

In *People* v. *Lyon* (1996) 49 Cal.App.4th 1521, 1524-1525 [57 Cal.Rptr.2d 415], the court held that legal expenses incurred by the victim to preserve defendant's assets in order to recover a small portion of embezzlement losses were themselves an economic loss incurred as a result of defendant's conduct. Finding that the restitution statutes had to be broadly and liberally construed, the appellate court upheld the trial court's restitution order.

In *County of Alameda* v. *State Bd. of Control* (1993) 14 Cal.App.4th 1096 [18 Cal.Rptr.2d 487], the court held that recovery from the Restitution Fund was limited to victims who could prove that they suffered an actual out-of-pocket loss for which they would not be compensated by any other source.

victim had been indemnified by some other service coverage such as insurance."[7]

### 3. IS THE RESTITUTION ORDER SUPPORTED BY SUBSTANTIAL EVIDENCE?

 Defendant contends that the restitution order is not supported by substantial evidence and that the trial court's calculation is "arbitrary, capricious and totally lacking an evidentiary foundation." He relies on *People* v. *Ortiz, supra,* 53 Cal.App.4th 791, which states: "We interpret the requirement the amount of loss be 'determined' by the court to mean the court must decide the amount of the loss on grounds which will withstand review for abuse of discretion. We base our interpretation of the statute on the well-established rule '. . . the trial court is vested with broad discretion in setting the amount of restitution [and] it may " 'use any rational method of fixing the amount of restitution which is reasonably calculated to make the victim whole.' " . . .' [Citation.]" (*Id.,* at p. 800.)

In addition to faulting the trial court for calculating the losses caused by defendant's conduct, a claim we have rejected above, defendant argues that the probation officer's memorandum and the attached Medi-Cal report are insufficient to support the restitution order. He complains that the report was hearsay on hearsay, but he did not make this objection below; and the Medi-Cal report was merely a computer generated totaling of all claims for medical expenses incurred to treat Mr. Prieto's injuries through November 1997.[8]

Defendant also points out that the computer-generated report shows both claims billed and amounts paid. The trial court used the claims billed amount ($286,565.92) rather than the total amounts which had actually been paid by the date of the computer run ($89,054.34). For example, the cost of after-emergency-room services billed was $210,488.44, while the total amount paid was only $20,013.58. Although defendant now claims that the trial court should have investigated these differences further, he argued at the hearing that the unpaid costs should not be included in the restitution order. The trial court ordered restitution in the higher amount, noting that there will

[7]Defendant asks us to take judicial notice of the fact that Mr. Prieto's guardian ad litem has filed a civil action against him and the City of Chino Hills for personal injuries. Finding that the first amended complaint is not relevant to any issue in this appeal, we deny the request for judicial notice.

[8]Specifically, the cover letter states: "These records come in the form of a Claims Detail Report (CDR). A CDR is a computer generated report listing all services supplied by health care providers and billed to the Medi-Cal program during a specified time frame." It further appears the claims detail report is prepared in the ordinary course of business of the carrier and is a normal business record.

be continuing care costs beyond the date of the computer run. Obviously, if Mr. Prieto remains in a vegetative state the rest of his life, as expected, the costs caused by defendant's conduct will far exceed the amount of the restitution actually ordered.

We therefore find that the trial court did not abuse its discretion in determining restitution on the basis of the claims amounts billed to Medi-Cal, and we further find that the memorandum is sufficient evidence to support the amount of the award.[9]

■ " ' ". . . [S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes." [Citation.]' [Citation.] [¶] This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution. [Citation.]" (*People* v. *Foster* (1993) 14 Cal.App.4th 939, 947 [18 Cal.Rptr.2d 1]; *People* v. *Hartley* (1984) 163 Cal.App.3d 126, 130 [209 Cal.Rptr. 131].) "When the probation report includes information on the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount." (*Foster*, *supra*, at p. 947; *In re S. S.* (1995) 37 Cal.App.4th 543, 546 [43 Cal.Rptr.2d 768]; *Hartley*, *supra*, at p. 130.)

■ Although a separate hearing was set on the issue of victim restitution, defendant did not submit any evidence to show that the memorandum prepared by the Medi-Cal carrier was inaccurate or unreliable. He therefore did not provide any factual basis for disregarding the amounts stated in the memorandum.

"When the probation report includes a discussion of the victim's loss and a recommendation on the amount of restitution, the defendant must come forward with contrary information to challenge that amount. [Citation.] . . . On the record before us we have no basis for finding the contingency fee unreasonable. The trial court did not abuse its discretion by following the probation officer's recommendation. [Citation.]" (*People* v. *Pinedo* (1998) 60 Cal.App.4th 1403, 1406-1407 [71 Cal.Rptr.2d 151].)

When considering a trial court's restitution determination, we consider whether it is arbitrary, capricious, or beyond the bounds of reason under all the circumstances. (*People* v. *Carbajal* (1995) 10 Cal.4th 1114, 1121 [43 Cal.Rptr.2d 681, 899 P.2d 67].) "Thus, while the amount of restitution cannot be arbitrary or capricious, 'there is no requirement the restitution

---

[9]Although not shown by the record, there may also be past or future claims which were not submitted to Medi-Cal but which were or will be paid by Medicare.

order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action. . . .' [Citation.]" (*People* v. *Ortiz, supra,* 53 Cal.App.4th 791, 800.)

There was substantial evidence to support the trial court's exercise of its discretion in ordering victim restitution in an amount which it determined to have been the amount of medical expenses caused by defendant's crime through November 1997. Accordingly, the trial court did not abuse its discretion in making the restitution order.

### 4. THE RESTITUTION ORDER DOES NOT VIOLATE DUE PROCESS GUARANTEES*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### 5. DISPOSITION

The judgment, including the order ordering actual victim restitution of $286,565.92, is affirmed.

Ramirez, P. J., and Ward, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 22, 2000.

---

*See footnote, *ante,* page 1266.