Filed 2/25/14  P. v. McLaughlin CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B242588 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. YA075909) |
| MICHAEL McLAUGHLIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Steven R. Van Sicklen, Judge.  Affirmed as modified and remanded.

Steven Graff Levine for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Lawrence M. Daniels and Ana R. Duarte, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Michael McLaughlin appeals from the judgment following his plea bargain. Specifically, he challenges portions of the trial court's restitution order. We agree with appellant that the trial court abused its discretion by ordering him to pay the victim lost income in an excessive amount, by setting the date for the accrual of interest as the date of injury, and by ordering that the victim be paid first. We find no merit to appellant's remaining contentions.

## BACKGROUND

**The Incident**

At approximately 1:00 a.m. on June 21, 2009, Kimberly Keeler (the victim) and her nephew were leaving a bar in Manhattan Beach. Appellant's friend was trying to detain appellant, who was heavily intoxicated and acting belligerent. The victim's nephew called appellant "gay" and a fight broke out between the nephew and appellant's friend. The victim was standing near the men. While she was yelling at the men to stop fighting, there was evidence that she also yelled at her nephew to "fuck" up appellant's friend and "kick [his] ass." At some point, appellant tackled the victim. She told responding officers and paramedics that she thought her right forearm and left hand might be broken, but that she would see a doctor later. The victim ultimately suffered extensive injuries and underwent several surgeries. Appellant was 29 years old at the time, a college graduate, employed full-time, and had no prior criminal history.

**The Information**

Appellant was originally charged with misdemeanor battery, but was later charged with two felonies after the extent of the victim's injuries came to light. On February 14, 2011, appellant was charged with assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1))[1] (count 1), and battery with serious bodily injury (§ 243, subd. (d)) (count 2). As to count 1, it was alleged that appellant personally inflicted great bodily injury (§ 12022.7, subd. (a)). Appellant pled not guilty and denied the special allegation.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

**The Original Plea Bargain**

In April 2010, appellant entered a plea agreement, changing his plea from guilty to no contest to count 2, and agreed to attend 60 Alcoholics' Anonymous (AA) meetings, perform 100 hours of community service, pay the victim $84,000 upfront for two years of lost income as a massage therapist based on her gross business income of $42,635, and to pay for her retraining or education up to a certain amount. The plea agreement also contemplated that the victim might accumulate additional medical bills and might require additional lost income for up to three years. If appellant fulfilled his obligations, he would be sentenced to a misdemeanor on count 2. Appellant claims that he was able to make such a large upfront payment because he was permitted to pay the victim's medical bills through the California Victim Compensation and Government Claims Board (VCB), which negotiates a reduced rate with medical providers.

In November 2010, the victim claimed she was unaware that appellant's sentence could be reduced to a misdemeanor, and she opposed the plea bargain prior to sentencing. She retained attorney Michael Fell to represent her interests. In January 2011, the victim's attorney appeared at the sentencing hearing. The trial court refused to accept the plea bargain and allowed appellant to withdraw his plea.

**The New Plea Bargain**

On May 11, 2011, appellant entered into another plea agreement that was essentially the same as the original one. He entered a plea of no contest to count 2, with sentencing to be continued for one year to allow him to pay the victim restitution in full. If restitution was paid in full, the charge would be reduced to a misdemeanor and appellant would be placed on summary probation. If restitution was not paid in full, appellant would be sentenced to a felony. A hearing to determine the amount of restitution was set to take place six months later. The prosecutor represented that appellant had substantially complied with the original plea bargain by completing a six-month anger management program, performing 100 hours of community service, attending 60 AA meetings, and had paid approximately $115,000 of victim restitution to date. The victim's attorney opposed the plea bargain. The prosecutor stated: "And it is

3

my representation to the court that [the victim] did agree to this because it was based on the understanding that she would receive a very large amount of money to take care of her expenses before he was even going to plead." The court accepted the new plea.

**The Restitution Order**

A restitution hearing was held on April 27, 2012. The trial court ordered appellant to pay a total of $310,645.10 in direct victim restitution, including medical expenses, lost wages for three years six months, interest, attorney fees and a balance due to the VCB, minus the amounts already paid.

**The Sentencing Hearing**

On May 11, 2012, pursuant to section 17, subdivision (b), the trial court amended the information to reflect count 2 as a misdemeanor, suspended imposition of sentence, and placed appellant on summary probation for a period of three years. Appellant was ordered to pay victim restitution in the amounts determined at the restitution hearing. Count 1 was dismissed.

**DISCUSSION**

Appellant contends that the trial court abused its discretion in fashioning the restitution order in the following ways: (1) Failing to order the victim to submit her medical bills to the VCB; (2) ordering appellant to pay an excessive amount of lost income; (3) ordering appellant to pay the victim's full amount of attorney fees; (4) fixing the date for the accrual of interest as the date of injury; and (5) ordering appellant to pay the victim, rather than the VCB, the remaining balance on her VCB account.

**I. Applicable Law and Standard of Review**

Section 1202.4 states: "It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." (§ 1202.4, subd. (a)(1).) To the extent possible, restitution "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct," including: "Medical expenses; [¶] [m]ental health counseling expenses; [¶] [w]ages or profits lost"; and "[a]ctual and reasonable

4

attorney's fees and other costs of collection accrued by a private entity on behalf of the victim." (§ 1202.4, subd. (f)(3).) Victim restitution statutes, like section 1202.4, enacted as a result of Proposition 8, are to be interpreted liberally and broadly to uphold the intention of the voters that victims of crimes receive restitution. (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132–1133.) However, restitution orders must be limited "to the victim's economic losses and to mitigate those losses to the extent possible." (*In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1017.)

A trial court's order of victim restitution is reviewed for an abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 663–664; *People v. Baker* (2005) 126 Cal.App.4th 463, 467.) "When considering a trial court's restitution determination, we consider whether it is arbitrary, capricious, or beyond the bounds of reason under all the circumstances." (*People v. Hove* (1999) 76 Cal.App.4th 1266, 1275.) No abuse of discretion will be found when there is a factual and rational basis for the amount of victim restitution ordered by the trial court. (*People v. Baker, supra*, at p. 467; *In re Johnny M., supra*, 100 Cal.App.4th at p. 1132.) However, if there is no substantial evidence to support the award, and there is no rational explanation, the trial court has abused its discretion. (*People v. Thygesen* (1999) 69 Cal.App.4th 988, 995–996.)

## II. Submission of Medical Bills to the VCB

Appellant contends that in fashioning the restitution order, the trial court abused its discretion by not ordering the victim to submit her medical bills to the VCB pursuant to the May 11, 2011 plea bargain. We disagree.

Appellant asserts that when he entered into the original plea bargain, it was understood by the defense, the prosecutor and the victim that he could only perform his financial obligations if the victim's medical bills were paid through the VCB at its reduced rate. He points out that following the original plea bargain, the victim did, in fact, submit her medical bills to the VCB, and that he detrimentally relied on her doing so. Prior to the hearing on the restitution order, he learned that the victim had stopped submitting her bills to the VCB. He therefore requested that the trial court order the victim to continue submitting her bills to the VCB. He argues that the trial court should

5

have made such an order, or, at the very least, should have given effect to the parties' mutual intention in fashioning the restitution order.

But, as the trial court correctly noted, the terms of the May 11, 2011 plea bargain did not mandate that the victim's medical bills be submitted to the VCB. Nor has appellant cited any statutory or other authority mandating such a required procedure. Moreover, appellant was aware that the victim opposed the May 11, 2011 plea bargain when he entered into it. Therefore, she was never a party to this agreement, and there is no mutual intention for the court to enforce. Appellant's argument that he is entitled to specific performance because he detrimentally relied on the victim's past performance of submitting her bills to the VCB has no merit where the victim was not a party to the agreement. The only other party to the May 11, 2011 plea agreement besides appellant was the prosecutor, who performed under the plea agreement by informing the trial court that appellant had substantially complied with the agreement and recommending that his sentence be reduced to a misdemeanor, which the trial court did. As the People note, "appellant's argument here appears to be that the victim should be held to the original plea agreement which he withdrew when the prior court indicated it would not sentence him to a misdemeanor . . . . That ship sailed, and he entered a new plea agreement in May 2011, albeit, under substantially the same terms except that the victim had accrued and incurred additional economic losses that were properly attributed to his criminal conduct and therefore were subject to the restitution order."[2]

---

[2]    The trial court indicated that if it did order the victim to submit her bills to the VCB, appellant would still be responsible for the amount the medical providers billed to the VCB, not how much they were willing to accept. Appellant contends: "To the extent the trial court's order was premised on the mistaken belief that if it did order the victim to submit her bills to VCB and VCB paid those bills, appellant was still responsible for the amounts medical providers <u>billed</u> to VCB, the trial court erred as a matter of law." Because the trial court did not order the victim to submit her bills to the VCB, appellant's contention is moot.

6

### III. Lost Income

Appellant contends that the trial court abused its discretion in ordering him to pay "lost wages" of $42,635 per year for three years six months, because this amount is excessive.[3] We agree.

The trial court ordered restitution in this amount primarily because it was the same amount included in the original plea agreement. In arguing to the trial court that this amount was excessive, appellant's counsel stated: "And I want the record to be clear that the payment of the $84,000 [for two years of lost income] was premised on a plea bargain and not on a restitution amount. It was premised on us getting a plea bargain, getting her money up front, because we thought there was a mechanism in place for medical bills where my client could afford to pay the whole judgment. That's gone. That's out the window. So to state that, you know, one part of the plea bargain I'm stuck with but not the other part, I don't find particularly fair."

The amount of $42,635 originates from the victim's 2008 tax return, which identifies this amount as "Gross receipts or sales" on her Schedule C (Profit or Loss From Business). But, as appellant points out, the victim's Schedule C also states that she had $25,011 in expenses in running her massage business, leaving her with a net profit of $17,624.

Section 1202.4, subdivision (f)(3)(D) provides that the victim is entitled to "[w]ages or profits lost due to injury incurred by the victim." Because the victim ran a massage business, she was not receiving wages at the time of the incident, but was living off of her profits. The victim was therefore entitled to receive only her lost profits. "A restitution order is intended to compensate the victim for [her] actual loss and is not intended to provide the victim with a windfall." (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172.) Any amount above her lost profits of $17,624 constituted an improper windfall for the victim. Thus, the trial court abused its discretion in ordering appellant to pay more than this amount in lost income. Accordingly, the amounts in

---

[3] The restitution order includes lost wages of $64,778 for three years six months, apparently deducting the two years of payments appellant has already made.

7

excess of $17,624 per year for three years six months that have already been paid by appellant shall be applied to the victim's other reimbursable expenses at a new restitution hearing upon remand.

## IV. Attorney Fees

Appellant contends that the trial court abused its discretion by ordering him to pay the victim's full attorney fees of $32,670. We disagree.

Section 1202.4, subdivision (f)(3)(H) provides that "[a]ctual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim" may be recovered as restitution. (*People v. Fulton* (2003) 109 Cal.App.4th 876, 884–885 ["we hold that under the plain meaning and express purpose of section 1202.4, subdivision (f)(3)(H), actual and reasonable attorney fees incurred by a victim as a result of the defendant's criminal conduct are recoverable as restitution, but they are limited to reasonable attorney fees incurred to collect restitution otherwise permitted under the statute"]; *People v. Maheshwari* (2003) 107 Cal.App.4th 1406, 1411 ["Both the attorney fees and private investigator's fees constituted economic losses incurred by [the victim] as a result of appellant's conduct. Both were properly the subject of a restitution order"].)

Appellant argues that the victim should not receive the full amount of her attorney fees because her attorney spent time trying to undo the plea agreements, rather than solely attempting to obtain restitution for her. He argues that "the upending of the plea and restitution efforts took place on different dates, and the [victim's] lawyer's bill can reasonably be divided between the restitution aspect and the upending of the plea," but he provides no citation to the record.

At the restitution hearing, the associate for the victim's attorney stated: "In this case, from day 1 when Mr. Fell was hired, restitution was on the table. It was always being discussed. It was incorporated into conversations. It was discussed . . . in briefs, from the first brief that was filed by Mr. Fell back in November 24th, 2010. That was the first time there was discussions about restitution. And . . . it cannot be separated out. It's been incorporated through every bit of work that we've done on behalf of [the victim]."

8

The trial court agreed stating, "Based on the bills—the focus of the bills was restitution beginning in November of 2010."

"[B]ecause of the strong public policy seeking to provide crime victims with direct restitution for all the 'losses they suffer' (Cal. Const., art. I, § 28, subd. (b)), when fees cannot be reasonably divided between the pursuit of economic losses as opposed to noneconomic losses, the victim is entitled to be fully reimbursed for all actual and reasonable attorney fees." (*People v. Fulton, supra*, 109 Cal.App.4th at p. 885.) The record shows that the trial court reviewed Mr. Fell's briefs, his bills, and heard arguments from him and the victim. Under the circumstances here, we cannot say that the trial court abused its discretion in ordering appellant to pay the victim's full attorney fees in the amount of $32,670.

## V. Interest Calculation

Appellant contends that the trial court abused its discretion in ordering him to pay interest in the amount of $57,914, because this calculation was based on a date not permitted under the restitution statute. We agree.

Section 1202.4, subdivision (f)(3)(G) provides that a victim may recover as restitution "[i]nterest, at the rate of 10 percent per annum, that accrues as of the date of sentencing or loss, as determined by the court."

Here, the trial court awarded interest on numerous items, including medical bills, "from the date of the injury." Because section 1202.4, subdivision (f)(3) provides that a restitution order "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct," we conclude that interest may begin to accrue only on the date the victim actually incurs a *financial* loss, or on the date of sentencing.

The date of injury, or the date of the incident, was June 21, 2009. The restitution order was made on April 27, 2012. According to appellant, the majority of the itemized bills for which interest was calculated involved services that occurred after the date of injury. Because the financial loss occasioned by these bills accrued after the date of

9

injury, there was no rational or substantial basis for the trial court to order interest to begin accruing as of June 21, 2009.

Accordingly, we remand the matter to the trial court to determine a statutorily approved date for interest to begin accruing on the itemized bills.

## VI.  Payment of $12,449.30 to the VCB

Finally, appellant contends, and the People concede, that the trial court abused its discretion by ordering appellant to pay the remaining balance in the victim's VCB account to the victim, rather than to the VCB.

Section 1202.4, subdivision (f)(2), provides:  "Determination of the amount of restitution ordered pursuant to this subdivision shall not be affected by the indemnification or subrogation rights of a third party.  Restitution ordered pursuant to this subdivision shall be ordered to be deposited to the Restitution Fund to the extent that the victim, as defined in subdivision (k), has received assistance from the California Victim Compensation Program . . . ."  Government Code section 13963, subdivision (a), provides that the VCB "shall be subrogated to the rights of the recipient to the extent of any compensation granted by the board," and that the subrogation rights "shall be against the perpetrator of the crime or any person liable for the losses suffered as a direct result of the crime which was the basis for receipt of compensation . . . ."

Thus, at the sentencing hearing on May 11, 2012, when appellant was prepared to directly reimburse the VCB with a check for $12,449.30, the trial court erred in ordering this amount to be paid to the victim instead.  Accordingly, upon remand, the trial court is directed to order appellant to make future restitution payments to the VCB, until the victim's VCB account is paid in full.

10

## DISPOSITION

The matter is remanded to the trial court for a new restitution hearing and order, in which the amount of reimbursable lost income is reduced to $17,624 per year for three years six month, the total interest amount is recalculated from a new date, and appellant is ordered to pay the VCB first until the victim's VCB account is paid in full. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
          ASHMANN-GERST

We concur:

_____, P. J.
    BOREN

_____, J.[*]
    FERNS

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.