Filed 10/14/14  P. v. Johnson CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B249732 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA024081) |
| v. | |
| KENNETH WAYNE JOHNSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Eric C. Taylor, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, and Scott A. Taryle, Deputy Attorney General, for Plaintiff and Respondent.

_____

Kenneth Wayne Johnson was convicted in 1996 of first degree burglary and sentenced pursuant to the three strikes law to an indeterminate state prison term of 35 years to life.  He was also ordered to pay a restitution fine.  Following a series of writ petitions and orders from this court during the past several years, the amount of the restitution fine was corrected to $500 and Johnson was ordered at a new restitution hearing to pay $13,540.29 in direct victim restitution.[1]  On appeal he contends the trial court violated his due process rights by failing at the 2013 restitution hearing to take judicial notice of a 1996 probation report, which had estimated the loss to the victims at $5,000.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Posttrial Proceedings Preceding the 2013 Restitution Hearing*

In July 2011 Johnson petitioned this court for a writ of habeas corpus seeking to correct the minute order and abstract of judgment from his 1996 conviction, which improperly reflected imposition of a $5,000 restitution fine rather than a $500 fine under former Government Code section 13967.  We issued an order to show cause returnable before the superior court.  The People stipulated to the correction of the restitution fine but requested the trial court hold a hearing to determine actual restitution to the victims as required by Penal Code section 1202.4, subdivision (f).

---

[1]     Direct victim restitution and restitution fines are distinct.  (See *People v. Villalobos* (2012) 54 Cal.4th 177, 181.)  "[Penal Code] section 1202.4, subdivisions (a) and (f) require every person convicted of a crime to pay restitution directly to the victim in an amount equal to the economic loss suffered by the victim as a result of the defendant's conduct. . . .  Separate and apart from restitution, section 1202.4, subdivision (b) requires every person convicted of a crime to pay a restitution fine:  'In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record.'  A restitution fine is not paid by the defendant directly to the victim.  Instead, it 'shall be deposited in the Restitution Fund in the State Treasury' (§ 1202.4, subd. (e)), from which crime victims may obtain compensation through an application process (see Gov. Code, §§ 13950-13960)."  (*Id*. at p. 181.)

Johnson was ordered to pay $5,000 in direct restitution to the victims on March 22, 2012 at a hearing at which neither he nor counsel representing him was present. Johnson challenged that order in a new writ petition. We notified the parties on June 22, 2012 of our intention to issue a peremptory writ of mandate vacating the restitution order based on the record provided by Johnson, which established the order had been issued without affording him notice, representation by counsel, discovery as to how the victims' economic loss was calculated or an opportunity to appear at a hearing. On June 29, 2012 the superior court vacated its restitution order and set a new restitution hearing, which was finally held in mid-2013.

2. *The 2013 Restitution Hearing*

The court held an evidentiary hearing on May 2, 2013 at which Barry Saizon testified. Saizon and his wife were victims of the 1995 residential burglary, which resulted in the theft of jewelry, clothing and other personal items that were never recovered.

The prosecutor had asked the Saizons in 2012 to list their unrecovered items, which consisted of a bracelet, three rings and two different pairs of earrings with a total value of $18,396.00. The list included the appraised value of each item, an attached receipt or both. On direct examination Saizon reviewed the list and agreed he had mistakenly included the cost of the second pair of earrings, which had been purchased to replace the stolen pair, and his wife had miscalculated the total amount of the loss. Taking these errors into account, Saizon testified the total value of the unrecovered items was closer to $13,000.

On cross-examination Saizon acknowledged there was a discrepancy between the amount of loss he was now claiming and the amount of the loss reflected in the 1995 police report. Saizon explained, when he was interviewed by police on the day of the burglary, he had calculated in haste $3,035.78 as the amount of the loss. He and his wife subsequently had an opportunity to inventory their jewelry and assess the value of the missing pieces.

3

Johnson's counsel then asked Saizon about conversations as to the amount of loss either he or his wife had with the probation department. Saizon answered he did not recall talking to a probation officer at any time or giving the probation department a copy of the list of the unrecovered items. Saizon also testified he did not recall whether a probation officer had spoken to his wife in his presence. Referring to the April 15, 1996 probation report, which included a summary of the probation officer's interview of Saizon's wife, counsel asked if the probation officer had correctly estimated the value of the unrecovered items as $5,000. Saizon replied, "I can't answer that," and repeated he was not sure his wife had talked to the probation officer in his presence.

Johnson's counsel requested the trial court take judicial notice of the probation report, specifically the notation of the estimated $5,000 loss. In response to the court's inquiry counsel explained he "was not asking the court to take judicial notice of [the probation report] to say that that is the amount due. I am asking the court to take judicial notice of it to impeach the witness." The court denied the request, stating, although it was precluded by law from taking judicial notice of the $5,000 estimate in the probation report, defense counsel could "submit [the report] for the court to review." Defense counsel did not respond; the prosecutor stated he had no objection. Following argument by counsel, the trial court tentatively ordered $13,540.29 in victim restitution and continued the hearing for further argument concerning the defense request for judicial notice and other issues.

At the continued hearing on June 28, 2013 defense counsel reminded the trial court it had previously refused to consider the probation report in calculating the restitution award. The court disagreed, stating it had only advised counsel it could not take judicial notice of the loss estimate, not that it could not read and consider the contents of the probation report, including the estimated $5,000 value of the Saizons' unrecovered items.[2] However, the court continued, it was not obligated to adopt that sum

---

[2]     Johnson's counsel responded, "My understanding is considering [a probation report] is much the same as taking judicial notice [of it]."

4

as the restitution award, but would instead evaluate all the evidence presented at the restitution hearing in fixing the amount of restitution.

Counsel again asserted he intended to rely on the probation report solely to impeach the Saizons based on their differing claims of loss. The court denied counsel's request to take judicial notice of the probation report and motion to present additional evidence, confirmed its tentative ruling and issued a final order awarding the Saizons $13,540.29 in victim restitution plus 10 percent interest per annum since 1995.

**DISCUSSION**

1. *Legal Principles*

Victim restitution is mandated by the California Constitution, which provides in part, "Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss," unless compelling and extraordinary reasons exist to the contrary. (Cal. Const., art. I, § 28, subd. (b)(13)(B).) The same mandate appears in the Penal Code, which provides the trial court "shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record." (Pen. Code, § 1202.4, subds. (f), (g); see generally *Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 304.) The statutory restitution provisions are to be construed broadly to achieve the goals of public safety, victim compensation and offender rehabilitation. (See *Luis M.*, at p. 305; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1126.) The standard of proof at a restitution hearing is a preponderance of the evidence. (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.)

We review restitution orders for abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 663.) "Under this standard, while a trial court has broad discretion to choose a method for calculating the amount of restitution, it must employ a method that is rationally designed to determine the surviving victim's economic loss. To facilitate appellate review of the trial court's restitution order, the trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make a clear statement of the calculation method used and how that method justifies the amount

5

ordered." (*Id.* at pp. 663-664.) If there is a "factual and rational basis" for the amount ordered, no abuse of discretion is present. (*People v. Carbajal, supra,* 10 Cal.4th at p. 1125.)

2. *Johnson's Due Process Rights Were Not Violated*

Johnson's sole contention on appeal is that the trial court failed to employ a rational method of fixing the amount of restitution—thereby depriving him of his right to due process—because it denied his request to take judicial notice of the 1996 probation report and thus failed to consider the $5,000 estimate of loss stated in that report. According to Johnson, because the estimate was made relatively close in time to the burglary, it was much more reliable than Saizon's 2013 testimony at the hearing.

As discussed, however, at the restitution hearing Johnson's counsel advanced the $5,000 estimate not as evidence of the loss sustained but to impeach Saizon and to buttress the defense theory the Saizons had inflated the number and value of their unrecovered items over time. Counsel actually argued there was support in the record only for awarding $3,035.78 in victim restitution, as indicated in the police report from the day of the burglary.

In any event, the restitution award and the process by which it was reached did not violate Johnson's due process rights. (See *People v. Cain* (2000) 82 Cal.App.4th 81, 86, 87 ["[t]he scope of a criminal defendant's due process rights at a hearing to determine the amount of restitution is very limited"; "[t]he trial court violates the defendant's due process right at a hearing to determine the amount of restitution if the hearing procedures are fundamentally unfair"]; see also *People v. Giordano, supra*, 42 Cal.4th at p. 662, fn. 6 ["numerous courts have held that restitution hearings require fewer due process protections than civil hearings or criminal hearings of guilt"].) The restitution hearing, as reflected by the record, was not fundamentally unfair: Johnson's counsel was not restricted in his attempts to rebut the Saizons' claim through cross-examination of Barry Saizon, presentation of affirmative evidence and argument that the current, elevated claim was fraudulent based on the Saizons' earlier evaluations of their losses. Moreover,

6

although denying judicial notice of the contents of the probation report, the court assured Johnson's counsel it was aware of the $5,000 estimate and considered it in reaching its decision.

To the extent Johnson is disputing the factual basis for the award in the guise of a due process claim, "[I]t is well settled that 'statements by the victims of the crimes about the value of the property stolen constitute "prima facie evidence of value for purposes of restitution."'" (*People v. Prosser* (2007) 157 Cal.App.4th 682, 690-691.) Here, Barry Saizon testified at length concerning the nature and value of the unrecovered items and provided supporting documentation. The trial court was well within its discretion to believe his testimony and to adopt his valuation of the loss. (See *People v. Hove* (1999) 76 Cal.App.4th 1266, 1275 [trial court's restitution order will be upheld on appeal unless it is "arbitrary, capricious, or beyond the bounds of reason under all the circumstances"].)

## DISPOSITION

The restitution order of June 28, 2013 is affirmed.


PERLUSS, P. J.


We concur:


WOODS, J.


SEGAL, J.[*]


---

[*]  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7