Filed 2/27/26  P. v. Richards CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>ROYCE DEIONTE RICHARDS,<br><br>      Defendant and Appellant. | A171039<br><br>(Contra Costa County<br>Super. Ct. No. 01-22-01721) |

Nine months after Royce Deionte Richards committed an assault and false imprisonment, his victim paid for one night in a motel room after seeing Richards drive by her home multiple times.  In this appeal, Richards challenges $105.01 of the court's restitution order on the grounds that the motel expense was not proximately caused by his criminal conduct.  We affirm.

## I.  BACKGROUND

In June 2023, Richards pleaded guilty to numerous felony crimes committed against four different women on separate dates[1] with the

---

[1] All statutory references are to the Penal Code.  Richards pleaded guilty to committing assault by means likely to produce great bodily injury (§ 245, subd. (a)(4)) against four victims between June 2020 and May 2022, to committing false imprisonment by violence (§§ 236, 237) against the same

1

understanding he would be sentenced to six years in prison, subjected to 10-year criminal protective orders (§ 136.2, subd. (i)), and required to pay restitution to all victims on all counts including the dismissed counts, among other terms. Jane Doe 3, whose restitution claim is the subject of this appeal, was the victim of an assault and false imprisonment committed by Richards in November 2021.

At the hearing when Richards pleaded guilty, and at his sentencing hearing, Jane Doe 3 appeared in court to object to the plea agreement. During the first hearing, before Richards pleaded guilty, Jane Doe 3 described the planned six-year prison sentence as "unacceptable" in part because, "for nearly a year, . . . [she] had to . . . suffer [Richards's] freedom and see him at public parks", which prevented her from taking her children there. She explained that she "stay[ed] in a hotel for an amount of time" and didn't "sleep[] in [her] own bed for several months." Jane Doe 3 had also learned of other people who were victimized by Richards and believed he "continued to show up and try to harass and intimidate . . . other victims."

Jane Doe 3 claimed Richards had left her "disfigured," "bloody", "and stranded[] in Vallejo." The incident resulted in broken facial bones, a large lump behind her ear, and spitting "out blood for 13 days" after the attack. Crying, Jane Doe 3 explained, "it's just a lot of embarrassment, and anxiety, and, you know, everything connected to it has been really overwhelming." She also claimed she had "been living in fear for a long time now, because of

victims over that same period, and to making criminal threats (§ 422), against Jane Doe 1 in May 2022. The balance of charges was dismissed. During proceedings, the trial court referred to the victims as Jane Does 1 through 5. Although five victims are referenced in the information, Richards pleaded guilty to crimes involving all but Jane Doe 5.

2

all of the large amount of evidence . . . and [because of] information [she has] proving police used this man to target certain people for them."

Jane Doe 3 would see Richards around town and made many phone calls to the police that she felt went ignored. Even after Richards was in custody, she struggled with anxiety from seeing vehicles like the one used to kidnap her. She had lost "[c]ountless hours" of sleep and spent "hours and hours of crying . . . ." Jane Doe 3 had also been informed that Richards was known to be a "shooter" and she feared he had somehow learned her address. She witnessed Richards drive by her home on more than one occasion, and once while she and her son were out front working on a vehicle. She felt she had "been made to suffer Mr. Richards' unjust liberty for nearly a year before he was finally incarcerated . . . ."

Richards was sentenced in July 2023. Jane Doe 3 appeared in court to object once more to the plea deal. She also accused a police officer and a district attorney of making sexual advances that she turned down. After listening to her concerns, the trial court explained the court's role when presented plea agreements reflecting the "thoughtful negotiations of two opposing sides." Richards was sentenced to prison pursuant to the terms of the plea agreement. Restitution for all victims was reserved.

At the restitution hearing in May 2024, Jane Doe 3 submitted a restitution packet seeking $700 million.[2] As relevant to this appeal, Jane Doe 3 requested "hotel costs" and presented a receipt for $105.01, the cost of a

---

[2] At variance with this total, the individual components of the claim included $25,000 in "security expenses" for her home and car, $2,000 for a stolen phone, $1,200 to obtain copies of court documents "pertaining to this case," and $2 billion for medical expenses including future therapy. On October 29, 2025, this court granted Richards's unopposed motion to augment the record with this restitution packet.

one-night motel room rental plus tax. When the court asked why she felt she had to stay at a motel, she replied that "[she] saw [Richards] drive by [her] home multiple times" and had been told Richards "is known to be [a] shooter." "I even saw him outside of my home drive by when I was out front working on my vehicle with my son, and so I didn't feel safe there." She also feared the police and their retaliation toward her.

Counsel for Richards disputed the entirety of Jane Doe 3's restitution claim, challenging its accuracy and commenting that the underlying offense from almost three years earlier resulted in Jane Doe 3 being discharged from the hospital with ibuprofen and without any significant long-term injuries.

The court announced it intended to "fashion an order of some restitution and then deny others without prejudice . . . ." It made orders for restitution concerning Jane Doe 3's missing cell phone and for her costs to copy court documents. Other claims regarding security, medical, and therapy costs were denied without prejudice, subject to further proof. Two billion dollars, the court added, was not "a realistic estimate of therapy even if it were to continue for the remainder of Jane Doe 3's lifetime." The court also confirmed that Richards had been "in the community" at the time she stayed at the motel. Due to technical issues that limited Richards's ability to participate by videoconference, the restitution hearing was continued to a new date.

At the next hearing, Richards's counsel argued against restitution for the motel room because Jane Doe 3 lacked credibility and there was not "a satisfactory nexus between this particular hotel room and her victimization . . . ." The prosecutor responded that, during proceedings, Jane Doe 3 had made it clear to his office "she was seeing the defendant in public."

She would see him in various places: around the downtown Concord area, at a 7-Eleven store, and in an area where Richards was transient at the time.

The court ordered Richards to pay $105.01 as restitution for the one-night motel stay.

## II.  DISCUSSION

*A. General Principles of Victim Restitution*

In California, restitution for victims of crime is "constitutionally and statutorily mandated."  (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.)  The state constitution grants victims the right to seek restitution and requires the people who commit crimes to pay for the losses they cause.  (Cal. Const., art. I, §§ 28, subds. (b)(13)(A), (B).)  To implement this requirement, the Legislature enacted section 1202.4, a statute that requires criminal defendants to make restitution to victims "in every case in which a victim has suffered economic loss as a result of the defendant's conduct."  (§§ 1202.4, subds. (a)(3)(B), (f); *People v. Millard* (2009) 175 Cal.App.4th 7, 24.)  A victim's right to restitution is " 'broadly and liberally construed' " and "[t]he term 'economic losses' is . . . entitled to an expansive interpretation."  (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132–1133.)

Defendants are entitled to a hearing before a judge to determine the amount of restitution, which must be proven by a preponderance of the evidence.  (§ 1202.4, subd. (f)(1); *People v. Trout-Lacy* (2019) 43 Cal.App.5th 369, 373.)  The court enjoys wide discretion over the source and kind of information it may consider.  (*People v. Hove* (1999) 76 Cal.App.4th 1266, 1275.)  " ' " 'This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution.' " ' "  (*Ibid.*)  Economic losses may be "based on the amount of loss claimed by the victim" or upon "any other showing to the court."  (§ 1202.4, subd. (f).)

5

"At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of . . . her economic loss. (Citations.) 'Once the victim has [i.e., the People have] made a prima facie showing . . ., the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim. [Citations.]' (Citation.)" (*People v. Millard, supra*, 175 Cal.App.4th at p. 26.)  The court's restitution order must, to the extent possible, reflect "a dollar amount that is sufficient to fully reimburse the victim . . . for every determined economic loss . . . ." (§ 1202.4, subd. (f)(3).)

On appeal, "we review the trial court's restitution order for abuse of discretion." (*People v. Giordano* (2007) 42 Cal.4th 644, 663.)  " '[E]ven though the trial court has broad discretion in making a restitution award, that discretion is not unlimited.' " (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498.)  It may not be arbitrary or capricious.  (*Ibid*.)  But " '[w]hen there is a factual and rational basis for the amount . . . ordered by the trial court, no abuse of discretion will be found' " on appeal.  (*Id*. at p. 499)  " ' "[T]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings. ' " (*People v. Keichler, supra*, 129 Cal.App.4th at p. 1045.)

B. *The Trial Court Properly Found that the Motel Stay was an Economic Loss Proximately Caused by Richards's Criminal Conduct*

Richards challenges the order directing him to reimburse Jane Doe 3 for the cost of the motel.  He contends the order must be reversed because there was insufficient evidence his crimes against her in November 2021

6

were the proximate cause of the motel stay nine months later in August 2022. We disagree.

An economic loss has been suffered "as a result of the defendant's conduct" (§ 1202.4, subd. (f)) when there is a proximate causal connection between his criminal conduct and that loss. (*People v. Jones* (2010) 187 Cal.App.4th 418, 425.) California courts have adopted the " 'substantial factor' " test to evaluate proximate cause. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321–1322; *People v. Foalima* (2015) 239 Cal.App.4th 1376, 1396 ["trial court's task was to determine whether the criminal conduct for which defendant was convicted was the proximate cause of the damage to . . . clothing and household items"]; *People v. Jones, supra*, 187 Cal.App.4th at p. 427 [case remanded for trial court to decide restitution liability "consistent with the principles of proximate causation"].) This test requires only that the defendant's criminal conduct constitute more than a " ' "negligible or theoretical" ' " cause of the victim's loss. (*People v. Holmberg, supra,* 195 Cal.App.4th, at p. 1321–1322) " 'Thus, "a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage, or loss *is not* a substantial factor" . . . but a very minor force that does cause harm *is* a substantial factor.' " (*Ibid.*, italics added.) Phrased alternatively, "the defendant's criminal conduct must be more than a 'trivial or remote' factor contributing to the victim's loss, but it need not be the 'sole' cause of the loss." (*In re S.O.* (2018) 24 Cal.App.5th 1094, 1101; *People v. Holmberg, supra*, 195 Cal.App.4th at p. 1321–1322 [there can be more than one cause of injury].)

Notwithstanding the nine-month interval, Richards's criminal conduct constituted far more than a negligible, infinitesimal, or theoretical cause for Jane Doe 3's decision to rent a motel room. She only feared him because he had attacked and falsely imprisoned her. Months later, as he continued to

live in the community before his arrest, Jane Doe 3 again feared for her safety after seeing Richards drive down her street multiple times, perhaps having learned where she lived. Under these circumstances, Richards's crimes against her are substantial factors causing Jane Doe 3 to incur the cost of hiding for one night.

Independent intervening causes may cut off a defendant's restitution liability. But to be " ' " ' "independent[,]" the intervening cause must be 'unforeseeable . . . an extraordinary and abnormal occurrence, which rises to the level of an exonerating, superseding cause.' " ' " (*People v. Foalima*, *supra*, 239 Cal.App.4th at p. 1397.) This is not the case here. That the presence of her attacker driving down her street multiple times would motivate Jane Doe 3 to pay for one night away from home strikes us as an expense that is neither extraordinary nor abnormal. Quite the opposite, it is an expense well within the reasonably foreseeable consequences of Richards's crimes against her. (*People v. Jones*, *supra*, 187 Cal.App.4th at p. 427 [" 'If an intervening cause is a normal and reasonably foreseeable result of defendant's original act the intervening act is 'dependent' and not a superseding cause, and will not relieve defendant of liability' "].)

We reject Richards's claim that the restitution order was not supported by substantial evidence. He argues that because Richards never threatened her or "gave her the impression that he would cause her harm" during their "chance encounters" in the community, Jane Doe 3 had no reason to feel "so unsafe at home that she needed to stay at [a] Motel 6" in August. He contends the fact that Jane Doe 3 crossed paths with Richards without renting a motel room before August shows that Richards was not a threat to

8

her.[3]  And, although she claimed to have learned about other misconduct committed by Richards in the community, "[t]he most recent alleged criminal conduct Doe 3 heard about . . . occurred in March 2022", "five months prior to her one-night [motel] stay . . . ."

These observations do not reveal the insufficiency Richards urges. They are interpretations of the evidence and of Jane Doe 3's credibility the trial court was free to accept or reject.  On appeal, however, " '[w]e do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact.' " (*People v. Millard, supra*, 175 Cal.App.4th at p. 26.)  Here, the evidence was sufficient.  After confirming Richards had been out of custody at the time Jane Doe 3 stayed at the motel, the court credited Jane Doe 3's explanation for staying there.  Thus, as the circumstances before the trial court reasonably justified its findings, the restitution order will not be overturned simply because the circumstances might also support an alternate or contrary finding.  (*Ibid.*)

Substantial evidence supports the order.  The court did not abuse its discretion by ordering restitution for the motel room.

## DISPOSITION

The restitution order is affirmed.

---

[3] We do not draw this same conclusion from the record.  When Jane Doe 3 first objected to the plea agreement, she told the court she had "stay[ed] in a hotel for an amount of time" and "wasn't even sleeping in [her] own bed for several months."

_____
SMILEY, J.

WE CONCUR:


_____
HUMES, P. J.


_____
LANGHORNE WILSON, J.


*People v. Richards* / (A171039)

10